**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION** DEC 12 P 2:48

|  |  |
|---|---|
| MUSCOGEE CREEK NATION,<br>a federally recognized Indian tribe,<br>HICKORY GROUND TRIBAL TOWN, and<br>MEKKO GEORGE THOMPSON,<br>Plaintiffs, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| vs. | ) Civil Action Number:<br>)<br>) |
| POARCH BAND OF CREEK INDIANS,<br>a federally recognized Indian tribe,<br>BUFORD ROLLIN, STEPHANIE BRYAN,<br>ROBERT MCGHEE, DAVID GEHMAN,<br>ARTHUR MOTHERSHED, KEITH MARTIN,<br>SANDY HOLLINGER, GARVIS SELLS,<br>EDDIE TULLIS, ROBERT THROWER,<br>PCI GAMING AUTHORITY,<br>BRIDGET WASDIN, MATTHEW MARTIN,<br>BILLY SMITH, TIM MANNING,<br>FLINTCO, LLC,<br>MARTIN CONSTRUCTION, INC.,<br>D.H. GRIFFIN COMPANIES,<br>KEN SALAZAR, in his official capacity as<br>Secretary of the U.S. Department of Interior<br>JONATHAN JARVIS, in his official capacity as<br>Director of the National Park Service,<br>KEVIN WASHBURN, in his official capacity as<br>Assistant Secretary, Bureau of Indian Affairs,<br>U.S. DEPARTMENT OF INTERIOR, and<br>AUBURN UNIVERSITY,<br>Defendants. | ) 2:12-cv-1079-MHT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **COMPLAINT FOR DECLARATORY**<br>) **AND INJUNCTIVE RELIEF**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I. INTRODUCTION

1.      Hickory Ground is a parcel of land located near Wetumpka, Alabama. It is

sacred to the Plaintiffs as it is the location of their last capital, a historic ceremonial

ground, and many of their direct ancestors are buried there. Another tribe, the Poarch

Band of Creek Indians ("PBCI") obtained Hickory Ground with federal funds under the

1

false pretense of preservation, and currently is excavating and constructing a commercial enterprise—namely, a gambling facility and related construction—and has caused and continues to cause damage to the Plaintiffs by disturbing these ceremonial grounds and exhuming Plaintiffs' ancestors, contrary to the laws of the United States and the spiritual beliefs of Plaintiffs. Various governmental agencies are statutorily charged with duties to protect the Plaintiffs' rights, or at a minimum, to provide notice and consultation before the agency allows these damages to occur. These agencies have failed to fulfill their duties. PBCI has retained various third parties to conduct this excavation, construction and exhumation. Separately and severally, the actions of the Defendants have caused and continue to cause immediate and irreparable harm to the Plaintiffs who bring this lawsuit to remedy past damage and to stop further damage. Because these damages are continuing to occur, Plaintiffs request an expedited hearing in this matter.

2.     On or about July 11, 2012, the Poarch Band of Creek Indians ("PBCI") announced plans to construct a $246 million casino resort on Hickory Ground ("Project"). PBCI is currently engaged in ground disturbing and construction activity in furtherance of the Project, and shall be unjustly enriched as a result of its wrongful and unlawful conduct, unless injunctive relief is granted.

## II. **JURISDICTION AND VENUE**

3.     The Court has jurisdiction over Plaintiffs' claims arising under the laws of the United States under 28 U.S.C. § 1331.

4.     This action involves claims arising under federal laws including the Administrative Procedures Act, 5 U.S.C. §§ U.S.C. 551, *et seq.*, the National Historic

2

Preservation Act, 16 U.S.C. §§ 470, *et seq.*, the Native American Graves and Repatriation Act, 25 U.S.C. §§ 3001, *et seq.*, the Archeological Resources Protection Act, 16 U.S.C. §§ 470aa, *et seq.*, the American Indian Religious Freedom Act, 42 U.S.C. §§ 1996, *et seq.*, the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.*, and the Indian Reorganization Act, 25 U.S.C. §§ 461, *et seq.*

5. The Court has jurisdiction over actions brought by federally recognized Indian tribes under 28 U.S.C. § 1362 for claims arising under the laws of the United States.

6. Pursuant to 28 U.S.C. § 1391(e), venue is proper in this Court, the United States District Court for the Middle District of Alabama, because this action relates to federal lands located within this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2).

7. Defendant, Agencies and Officers of the United States, have waived their sovereign immunity against civil actions alleging a failure to act as required by law and seeking relief other than monetary damages. 5 U.S.C. § 702.

8. The Court has jurisdiction over Defendants Buford Rollin, Stephanie Bryan, Robert McGhee, David Gehman, Arthur Mothershed, Keith Martin, Sandy Hollinger, Garvin Sells, Eddie Tullis, (who are PBCI Tribal Council members sued in their official capacity) and Keith Martin, Bridget Wasdin, Matthew Martin, Billy Smith and Tim Manning (who are PCI Gaming Authority members sued in their official capacity) and Robert Thrower (who is PBCI's Tribal Historic Preservation Officer sued in his

3

official capacity) because they are tribal officials and the complaint alleges an ongoing violation of federal law where plaintiff seeks declaratory and injunctive relief only.

### III.   **PARTIES**

9.      Plaintiff Muscogee (Creek) Nation ("MCN") is an Indian tribe with approximately 70,000 members based in Oklahoma, which always has been recognized by the United States as a nation, and was relocated from its ancestral homelands in the South-Eastern United States, including Alabama, in the 1830s.

10.     Plaintiff Hickory Ground Tribal Town ("HGTT") is a traditional ceremonial ground of the MCN that has direct historic, cultural and lineal ties to Hickory Ground. Its members are the lineal descendants of the humans whose remains have been (are being) exhumed at Hickory Ground.

11.     Plaintiff George Thompson is the traditional chief ("Mekko") of HGTT.

12.     Defendant Poarch Band of Creek Indians ("PBCI") is an Indian tribe that was recognized by the United States in 1984, after claiming to descend from a small community of Creeks that received a land grant in Tensaw, Alabama, as a reward for assisting the United States to fight against and remove the Creek Nation from their homelands in Alabama to Indian Territory (present-day Oklahoma).  Defendant PCI Gaming Authority is a commercial enterprise owned by PBCI that is directly responsible for the gaming development at Hickory Ground.

13.     Defendants Buford Rollin, Stephanie Bryan, Robert McGhee, David Gehman, Arthur Mothershed, Keith Martin, Sandy Hollinger, Garvin Sells, and Eddie Tullis are members of the PBCI Tribal Council and officials of PBCI sued in their official capacity.  Defendants Keith Martin, Bridget Wasdin, Matthew Martin, Billy Smith and

4

Tim Manning are members of the PCI Gaming Authority and tribal officials sued in their official capacity.   Defendant Robert Thrower is PBCI's Tribal Historic Preservation Officer and a tribal official sued in his official capacity.

14.    Defendant Flintco, LLC is an Oklahoma company doing business in Alabama as a general contractor performing construction at Hickory Ground.  Defendant Martin Construction, Inc. is an Alabama corporation and a subcontractor performing construction activity at Hickory Ground.  Defendant D.H. Griffin Companies is a North Carolina company doing business in Alabama as a subcontractor performing construction activity at Hickory Ground.

15.    Defendant Auburn University ("Auburn") is an institution of higher learning that receives Federal funds that exercised possession or control over cultural items excavated at Hickory Ground.  This Defendant is included as a necessary party solely to the extent that this Court enters orders concerning the possession, custody, control, or relocation of cultural items at issue.

16.    Defendant U.S. Dept. of Interior is responsible for administration and management of federal lands.

17.    Defendant Ken Salazar is Secretary of the U.S. Dept. of Interior and named herein in an official capacity.

18.    Defendant Jonathan Jarvis is the Director of the National Park Service and named herein in an official capacity.

19.    Defendant Kevin Washburn is the Assistant Secretary of Interior for Indian Affairs and is named herein in an official capacity.

5

## IV. **FACTUAL BACKGROUND**

20.     In February, 1980, the Alabama Historical Commission ("AHC") nominated a parcel of land known as "Hickory Ground" for inclusion in the National Register of Historic Places pursuant to the National Historic Preservation Act of 1966 ("NHPA"). AHC stated Hickory Ground was the "last capital (1802-1814) of the National Council of the Creek Nation in the Creek's original homeland," and "one of the few remaining such sites which has not been extensively disturbed or destroyed."

21.     On or about March 10, 1980, the U.S. Dept. of Interior National Park Service ("NPS") listed Hickory Ground as an "historic property" on the National Register of Historic Places, subject to preservation under the NHPA.

22.     Hickory Ground, located within the aboriginal lands of the Plaintiffs Muscogee (Creek) Nation ("MCN") and Hickory Ground Tribal Town ("HGTT"), contains a ceremonial ground, burial sites and individual graves containing human remains of the ancestors of MCN and HGTT.  Hickory Ground has cultural and religious importance to MCN and HGTT.

23.     In 1980, PBCI acquired Hickory Ground with federal historic preservation grant funds, and entered a covenant with AHC to preserve Hickory Ground against development.     PBCI's   application   to   acquire   Hickory   Ground   fraudulently misrepresented to the AHC and the MCN and the United States that the purpose of the acquisition was to preserve the historic property for the benefit of all Creek Indians, including the "existing Hickory Ground tribal town in Oklahoma," and to protect the archeological remains "without excavation."  The MCN and HGTT were intended third party beneficiaries of PBCI's agreement to preserve Hickory Ground.

6

24.    In 1984, the United States recognized PBCI as an Indian tribe.  That year, the United States accepted legal title to Hickory Ground in trust for the benefit of PBCI pursuant to the Indian Reorganization Act of 1934 ("IRA").  The IRA allows the U.S. government, acting through the Interior Department's Bureau of Indian Affairs, to take land into trust for Native Americans.  In doing so, the land is somewhat removed from Alabama's traditional jurisdiction (*i.e.* certain anti-gambling and tax regulations).

25.    In 2009, the U.S. Supreme Court in Carcieri v. Salazar, 555 U.S. 379 ruled that the U.S. Secretary of Interior was not authorized to take land into trust for Indian tribes that were not recognized prior to 1934.  Accordingly, the current casino gambling facility operated by the PBCI at Hickory Ground is illegal and improper as the PBCI was not recognized as a tribe in 1934 but only some 50 years later.

26.    PBCI subsequently violated its covenant with AHC to preserve Hickory Ground by commencing construction of a gambling facility at Hickory Ground, which was opposed by the AHC, the Governor of Alabama, the U.S. Advisory Council on Historic Preservation, and Creek Indians throughout the country.

27.    In 1999, the National Park Service ("NPS") entered an agreement with the PBCI (the "NPS Agreement"), which allowed PBCI to assume the historic preservation responsibilities of the State Historic Preservation Officer ("SHPO").

28.    The NPS Agreement places a continuing duty upon PBCI to consult with MCN and to seek and take account of the views of MCN.  The NPS Agreement also requires NPS to carry out a periodic review of PCBI's historic preservation program to ensure that the program is consistent with the NPS Agreement.

29.     PBCI has excavated funerary objects and human remains belonging to the lineal ancestors of MCN and HGTT to construct a gambling facility at Hickory Ground. The disturbance of a grave is deeply offensive to the traditional and religious beliefs of the Plaintiffs.

30.     PBCI is currently engaged in construction and ground disturbing activity at or near the ceremonial ground, which is offensive to the sanctity of Hickory Ground as a sacred place, and prevents Plaintiffs from respecting their ancestors and praying at the ceremonial ground.

31.     PBCI excavated some human remains and archaeological resources without a permit issued pursuant to the Archeological Resources Protection Act ("ARPA") 16 U.S.C. §§ 470aa-470mm.   PBCI excavated other human remains and archaeological resources in violation of ARPA permits issued by the U.S. Dept. of Interior, Bureau of Indian Affairs.   There is a strong likelihood that the current excavation will disturb human remains and cultural items.   The excavation is offensive to the Muscogee (Creeks) who believe that the eternal peace of their ancestors has been irrevocably disturbed by opening the graves and separating them from funerary objects, which were placed there to accompany them in the afterlife.

32.     The human remains and archaeological resources at Hickory Ground are subject to protection under the Native American Graves and Repatriation Act ("NAGPRA") 25 U.S.C. §§ 3001, *et seq.*   The graves at Hickory Ground are abundant and unmarked.   According to Auburn's archeologists who performed excavations at Hickory Ground on behalf of PBCI, "proposed development of the property would be expected to encounter additional... human remains.... [and] construction in these areas

would be extremely harmful to these items." It is impossible to engage in ground disturbing at Hickory Ground without the risk of disturbing human remains belonging to the ancestors of Plaintiffs.

33.    HGTT (the direct lineal descendants of the Hickory Ground ancestors) and MCN have the closest "cultural affiliation" to the burial sites, associated funerary objects, unassociated funerary objects, sacred objects and cultural patrimony at Hickory Ground under the NAGPRA.

34.    PBCI failed to provide notice or initiate meaningful consultation or take into account comments of MCN or its relevant officials prior to commencing construction on the Project in violation of the NPS Agreement.

35.    NPS failed to adequately review the NPS Agreement for compliance with the NHPA, and has unreasonably delayed termination of the NPS Agreement for breach by PBCI.

36.    Plaintiffs have repeatedly requested that the remains of their ancestors be reinterred at the place where they were exhumed, that no further exhumations occur, that the current construction and excavation stop, and that Hickory Ground be preserved in a natural state. Defendants have refused all these requests.

37.    The United States owes a fiduciary duty to Indian tribes, and at a minimum this means agencies must comply with general regulations and statutes. See 36 C.F.R. § 800.2(c)(2)(ii)(B) (mentioning the "unique legal relationship" between federal government and Indian tribes). Violation of this fiduciary duty to comply with NHPA, ARPA, NAGPRA, IRA, AIRFA and RFRA requirements during the process of reviewing

and approving projects vitiates the validity of that approval and may require that it be set aside.

38.     Defendants owe a general duty of care to prevent harm to Plaintiffs. Defendants knew that Hickory Ground had historical, cultural and spiritual significance to Plaintiffs.   Defendants knew that Hickory Ground contained the burial sites of Plaintiffs' ancestors.   It was forseeable that excavating the human remains and associated funerary objects of Plaintiffs' ancestors would cause emotional harm to Plaintiffs.

39.     Defendants' actions proximately caused and continue to cause harm to Plaintiffs.  Plaintiffs are experiencing severe emotional distress because of the violation of the burial sites of their ancestors and the violation of their religious and cultural beliefs, including but not limited to their inability to respect their ancestors, pray on the ceremonial ground, and keep Hickory Ground sacred.

40.     Plaintiffs are seeking a Preliminary & Permanent Injunction to enjoin the Defendants' acts of desecration to Hickory Ground along with a declaration of their rights under the laws of the United States.   The basis for Plaintiffs' claims are that Defendants' actions are violative of several federal statutes.

## V. FACTS SUPPORTING CLAIM UNDER
## INDIAN REORGANIZATION ACT

41.     The Indian Reorganization Act of 1934 ("IRA") 25 U.S.C. §§ 461, *et seq.* is a comprehensive statute which includes regulations concerning Indian lands.   The IRA

authorized the Secretary of the Department of Interior, among other things, to acquire and hold land in trust for "Indians". 25 U.S.C. § 479.

42.   The IRA defines "Indians", who could benefit from this enactment, as follows: "The term 'Indian' as used in this Act shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction...." 25 U.S.C. § 479.  The statute had an effective date of June 18, 1934.

43.   As noted above, the Secretary accepted legal title to Hickory Ground in trust in 1984.  The Secretary had no authority to place the property, which included Hickory Ground, into trust.

44.      In 2009, the U.S. Supreme Court in Carcieri v. Salazar, 555 U.S. 379 ruled that the U.S. Secretary of Interior was not authorized to take land into trust for Indian tribes that were not recognized prior to 1934.  Since the PBCI were not recognized until 1984, some 50 years later, the transfer of Hickory Ground into trust for PBCI was unlawful, *ultra vires* and *void ab initio*.

45.    Likewise, the Secretary lacked statutory authority to create an Indian Reservation for PBCI under IRA § 7, which only allows a Reservation to be proclaimed for land acquired pursuant to the IRA.  PBCI lacks jurisdiction over Hickory Ground and the current ongoing construction to build and expand a gambling facility is improper and should be enjoined immediately because the gambling on Hickory Ground is illegal under the Indian Gaming Regulatory Act (IGRA), which only permits gaming on "Indian lands." 25 U.S.C. § 2703.

46.     Defendant Department of Interior ("DOI") and Bureau of Indian Affairs ("BIA") have unlawfully approved placing in trust the land including Hickory Ground.

11

The DOI and BIA have unreasonably delayed a determination that Hickory Ground was unlawfully taken into trust and unlawfully allowed the current construction and excavation to occur.

47. Accordingly, for this reason alone, Defendants' actions should be declared unlawful and an injunction entered to prevent the ongoing construction and excavation. However, even if the Court were to decide that the land was properly placed in trust, the construction and excavation should be enjoined for each of the following violations, separately and severally.

## VI. FACTS SUPPORTING CLAIM UNDER
## ARCHAEOLOGICAL RESOURCES PROTECTION ACT

48. The Archaeological Resources Protection Act ("ARPA") 16 U.S.C. §§ 470aa, *et seq*, was enacted to regulate and establish a permit system in order to prevent persons from removing archaeological artifacts and resources from federal and tribal lands. In doing so, ARPA declares these artifacts to be an "irreplaceable part of the Nation's heritage." Persons are prohibited from excavating, removing or altering any archaeological resource without first obtaining a permit or an exemption. 16 U.S.C. § 470ee.

49. Defendants excavated human remains and associated funerary objects at Hickory Ground without an ARPA permit. Defendants continue to excavate the soil at Hickory Ground without an ARPA permit.

50. Defendants violated 25 C.F.R. § 262.3(a), which requires: "Any person, except as provided in the uniform regulations at 43 C.F.R. § 7.5(b) through (d), who proposes to excavate or remove archaeological resources on Indian lands or on

properties owned or administered by the BIA must first apply for and secure a permit

under this Act."

51.     Defendants violated 25 C.F.R. § 262.5(c), which states:

"Permit applications proposing the excavation or removal of archaeological
resources on Indian lands shall include the following consent documents:

(1)Written permission from the Indian landowner and from
the tribe, if any, having jurisdiction over those lands.
This must contain such terms and conditions as the
landowner or tribe may request be included in the permit.
Where the permission is from a tribe, it should either state
that no religious or cultural site will be harmed or
destroyed by the proposed work or specify terms and
conditions that the permit must include in order to safeguard
against such harm or destruction....

(v) Where the terms and conditions a tribe
or landowner requests be included in a
permit are in conflict with the provisions
of this or any other Act, with Federal
regulations, or with each other, the Area
Director may negotiate with the requestor
to eliminate the conflict.  If the conflict remains,
the permit may not be issued."

52.     Beginning in 1990, Defendant Eddie Tullis, acting as Chairman of PBCI,

sought archeological permits to excavate human remains at Hickory Ground, by

fraudulently misrepresenting to archeologists including Diane Silva that "the Tribe

knows of no religious or cultural importance that will be harmed or destroyed by this

archeological work," even though Tullis knew that Creek Indians including members of

the PBCI publicly opposed the excavations because they believe the burials are sacred.

53.   Defendants did not adequately consult MCN or HGTT with regard to their

prior excavation, nor have they adequately consulted with MCN or HGTT concerning

the current excavation or the Project.   Therefore it is likely that they do not have a

13

permit because such consultation is required under 25 C.F.R. § 262.5(c). If they did obtain a permit, it was obtained without the requisite consultation and therefore improperly issued.

54.    Further, if Defendants did obtain a permit (as required under ARPA) they further violated 16 U.S.C. § 470cc(b)(2) because the permit was not issued for activity "undertaken for the purpose of furthering archaeological knowledge in the public interest."   In order to obtain archeological permits, Defendant PBCI fraudulently misrepresented to the BIA that the purpose of excavation was to construct a museum and community center, whereas the actual purpose of excavation of Hickory Ground was to construct or expand a gambling facility.

55.    Defendants violated 16 U.S.C. § 470cc(b)(3) by failing to properly preserve archaeological resources.

56.    Defendants violated 16 U.S.C. § 470cc(b)(4) by engaging in activity inconsistent with a management plan applicable to the public lands concerned.

57.    Defendants violated 16 U.S.C. § 470cc(b)(3) because the permitted activity was likely to harm or destroy a religious or cultural site, and neither HGTT or MCN were notified.

58.    Defendants violated 43 C.F.R. § 7.3(a)(6) by failing to provide for the disposition of Native American human remains and cultural items in accordance with NAGPRA.

59.    Defendants violated 25 C.F.R. § 262.7, which provides that:

"[w]hen consent by an Indian tribe to proposed excavation or removal
of archaeological resources from Indian lands it owns or over which
it has jurisdiction contains all of the information written as prescribed and
advised in section 262.5(c)(1) it may be taken to mean that subject to

14

such terms and conditions as the tribe might specify, issuance of a permit for the proposed work will not result in harm to or destruction of any site of religious or cultural importance. No further notification is necessary, unless the Area Director has reason to believe that the proposed work might harm or destroy a site of religious or cultural importance to another tribe or Native American group. He or she shall then follow the notification procedures at 43 C.F.R. 7.7."

60.    Defendants violated 43 C.F.R. § 7.7 by failing to notify HGTT and MCN prior to issuing a permit that might result in harm to, or destruction of, any Indian tribal religious or cultural site on public lands.

61.    Defendants violated 43 C.F.R. § 7.7(b)(1) by failing to seek to identify all Indian tribes having aboriginal or historic ties to Hickory Ground to determine the location and nature of specific sites of religious or cultural importance.

62.    Defendants violated 43 C.F.R. § 7.7(b)(4) by failing to consult with HGTT or MCN regarding what circumstances should be the subject of special notification for the discovery of human remains after a permit has been issued.

63.    Defendants violated 43 C.F.R. § 7.7(b)(4) by failing to include a requirement in the terms and conditions of permits, under § 7.9(c), for permittees to notify the Federal land manager immediately upon the discovery of human remains.

64.    Defendants violated 43 C.F.R. § 7.7(b)(4) by failing to notify the Federal land manager immediately upon the discovery of human remains.

65.    Defendants violated 43 C.F.R. § 7.7(b)(4) by failing to properly notify and adequately consult with HGTT or MCN following permittee's notification of the discovery of human remains.

66.    Defendants violated special condition (g) of the ARPA permit dated April 15, 2003, which states:

15

"Excavation or removal of any Native American human remains, funerary objects, sacred objects, and objects of cultural patrimony must be preceded by consultation with or, in the case of tribal lands, consent of the appropriate Indian tribe or Native Hawaiian organization.  Consultation should be conducted with the lineal descendants, tribal land owners, Native American representatives, and traditional religious leaders of all Indian tribes and Native Hawaiian organizations that can reasonably be assumed to be culturally associated with the cultural items or, if the cultural affiliation of the objects cannot be reasonably ascertained, from whose judicially established aboriginal lands the cultural items originated."

67.     Defendants are currently engaged in ground disturbing activity at Hickory Ground in violation of ARPA.  These activities are damaging the Plaintiffs including but not limited to causing severe emotional, spiritual and dignitary harm.

## VII. FACTS SUPPORTING CLAIM UNDER

## NATIONAL HISTORIC PRESERVATION ACT

68.     The National Historic Preservation Act ("NHPA") 16 U.S.C. §§ 470, *et seq*, establishes historic preservation as a national policy and "requires federal agencies, when considering projects on federal lands, to take into account any adverse effects that the proposed action may have on places having cultural or historic significance, and to make reasonable and good faith efforts to consult with any Indian tribe whose interests would be adversely impacted by the proposed action."  Pevar, The Rights of Indians and Tribes, 4th ed. p. 229 (2012).

69.  The Defendants have failed to preserve Hickory Ground as required under NHPA and in doing so, have violated the Plaintiffs' rights.

70.  The NHPA, among other things:  a) created a State Historic Preservation Office (SHPO) under § 101 (16 U.S.C. § 470a) to carry out historic preservation responsibilities and b) established the § 106 (16 U.S.C. § 470f) tribal consultation

16

process for undertakings that might affect historic properties. The Defendants have violated NHPA in numerous ways including but not limited to: NPS improperly transferred historic preservation responsibilities to PBCI; the PBCI have failed to fulfill their preservation responsibilities; the NPS Agreement inadequately protects Hickory Ground; and the current activity on Hickory Ground constitutes an undertaking for which the MCN was not adequately consulted.

71.    Hickory Ground is subject to protection under the NHPA because it is listed as an "historic property" on the National Register of Historic Places.

72.    NHPA § 101(d)(2) allows a tribe to assume part of the functions of a State Historic Preservation Officer with respect to tribal lands, including the responsibility to administer a historic preservation program approved by the Secretary. Defendant Robert Thrower is the Tribal Historic Preservation Officer ("THPO") for PBCI who possesses these responsibilities for Hickory Ground.

73.    The National Park Service ("NPS") violated NHPA § 101(d)(2)(D) by entering into the NPS Agreement and allowing PBCI to assume historic preservation responsibility from the SHPO without first consulting MCN, whose aboriginal lands were affected by the transfer.

74.    Defendants violated NHPA § 110(a)(2) by failing to establish a preservation program for the protection of historic properties that ensures that the agency's procedures for compliance with § 106 provide for the disposition of Native American cultural items from tribal lands in a manner consistent with NAGPRA.

75.    PBCI and Thrower violated NPS Agreement § 7, which requires PBCI's Tribal Historic Preservation Officer to adequately consult with representatives of other

17

tribes whose traditional lands may have been within the Poarch Band of Creek Indians Reservation by failing to consult with MCN and to take into account its views.

76.    PBCI and Thrower violated NPS Agreement § I(7), which requires, "[i]n any case where an action arising pursuant to the Act may affect the traditional lands of another Tribe, the Preservation Officer will on an as-needed basis, seek and take into account the views of that Tribe." PBCI's Preservation Officer failed to adequately seek or take into account the views of MCN regarding the excavation and development of Hickory Ground or the Project.

77.    Federal agencies have authorized and permitted the Project, including but not limited to: funding the acquisition of Hickory Ground; accepting Hickory Ground into trust; approving the PBCI's gaming ordinance; permitting excavation at Hickory Ground; and providing federal funding to PBCI to implement tribal and federal preservation programs at Hickory Ground. These actions constitute undertakings that require consultation for the Project under NHPA § 106.

78.    The Secretary of Interior erroneously issued permits for the excavation of human remains to build and expand a gambling facility at Hickory Ground without consulting with MCN or in the alternative, the PBCI proceeded to excavate without receiving such permits.

79.    In addition to the improprieties noted above, Defendants' violations of NHPA regulations, include, but are not limited to, the following:

a). failure to make a reasonable effort to identify Indian tribes that might attach religious and cultural significance to historic properties in the area of potential effects and invite them to be consulting parties, by failing to make a

18

reasonable effort to identity MCN and invite them to be consulting parties. 36 C.F.R. § 800.3(f)(2);

b).   failure to consult with any Indian tribe that attaches religious and cultural significance to historic properties affected by an undertaking, namely the MCN. 36 C.F.R. § 800.2(c)(2)(ii);

c).   failure to periodically review the PBCI historical preservation program and in consultation with the ACHP to evaluate the program to determine compliance with the NHPA 16 U.S.C. § (2)(A);

d).   failure to adequately review the NPS Agreement for compliance with the NHPA; and

e).   unreasonably delaying corrective action regarding PBCI's breach of the NPS Agreement, and for the failure of the NPS Agreement to comply with the NHPA.

80.   The Advisory Council on Historic Preservation ("ACHP"), which is charged with advising the President and Congress regarding historic preservation policy under the NHPA, determined that "activities undertaken by the Poarch Band prior to the completion of the review required by Section 106 of the National Historic Preservation Act (NHPA) have adversely affected the National Register-listed property.... [and] the archaeological surveys and data recovery were not carried out in compliance with Section 106 of the NHPA."

## VIII. FACTS SUPPORTING CLAIM UNDER NATIVE AMERICAN
## GRAVES PROTECTION AND REPATRIATION ACT

81.    The Native American Graves Protection and Repatriation Act ("NAGPRA") 25 U.S.C. §§ 3001-3013 has "two main purposes: (1) to allow tribes to recover religious and cultural items belonging to them or their members that were held in federally funded institutions, and (2) to protect the right of tribes to safeguard all human remains and artifacts that might be found or excavated on federal or tribal land." Pevar, The Rights of Indians and Tribes, 4th ed. p. 235 (2012).

82.    As the "lineal descendants" of the ancestors buried at Hickory Ground, HGTT and MCN possess the highest priority rights to ownership and control of their human remains and associated funerary objects at Hickory Ground under 25 U.S.C. § 3002(a)(1) (see also, 43 C.F.R. § 10.6).

83.  Defendants had a mandatory duty to provide notice and consult with the lineal descendants, namely MCN and HGTT, concerning either the intentional excavation or inadvertent discovery of human remains, funerary objects, sacred objects, or objects of cultural patrimony.   43 C.F.R. § 10.3.   Defendants breached this duty thereby depriving the Plaintiffs of their rights to claim these sacred objects and to oversee their repatriation.

84.    Defendants violated NAGPRA § 3(c)(1) by intentionally excavating cultural items belonging to MCN and HGTT from Hickory Ground:

a). without a permit issued under ARPA § 3002(c);

b). without the consent of MCN or HGTT as required under 25 U.S.C. § 3002(c)(2);  or

c). without showing proof of consultation or consent from MCN or HGTT as required under 25 U.S.C. § 3002(c)(4).

85.    Defendants violated 25 U.S.C. § 3002(d)(1) after discovery of the cultural items by failing to:

a). notify in writing the appropriate federal agency officials having primary management authority of the discovery (namely the Secretary of the DOI or the head of the agency to which those responsibilities were delegated by the Secretary);

b). notify the MCN of the discovery;

c). appropriately cease the activity; or

d). failing to make reasonable efforts to protect items discovered before resuming such activity.

86.  Defendants violated 25 U.S.C. § 3002(d) by failing to notify MCN and HGTT of the items they came into possession of.

87.    Defendants violated NAGPRA § 4 by using the Native American cultural items and human remains for profit without the right of possession to those remains as provided in the NAGPRA.

88.    Defendants also violated NAGPRA § 4 by transporting Native American cultural items and human remains without the right of possession to those remains as provided in the NAGPRA.

89.    Defendants violated 25 U.S.C. § 3003 by failing to:

a). compile an inventory of Native American human remains and associated funerary objects;

21

       b).   identify the geographical and cultural affiliation of such item; or

       c).   provide notice to HGTT or MCN.

90.    Defendants violated 25 U.S.C. § 3005(a)(1) by failing to return human remains and associated funerary objects to HGTT or MCN.

91.    Defendants violated 25 U.S.C. § 3005(a)(3) by failing to consult with the members of HGTT or MCN to determine the place and manner of repatriation of such items.

92.    Defendants violated 25 U.S.C. § 3005(d) by failing to share information they possessed regarding the objects in question with HGTT or MCN to assist them in making a claim.

93. In addition, the Defendants were required under NAGPRA to comply with the requirements of the ARPA which they violated as set out above.  43 C.F.R. § 10.3.

94. Defendants are continuing to violate NAGPRA with the current excavation and construction.

## IX. FACTS SUPPORTING CLAIM UNDER
## THE AMERICAN INDIAN RELIGIOUS FREEDOM ACT AND
## THE RELIGIOUS FREEDOM RESTORATION ACT

95.    Congress has enacted legislation to protect Native Americans in the performance of their religious ceremonies and traditional forms of worship and beliefs. These statutes include the American Indian Religious Freedom Act ("AIRFA" at 42 U.S.C. §§ 1996, *et seq*) and the Religious Freedom Restoration Act ("RFRA" at 42 U.S.C. §§ 2000bb, *et seq*).

a)  AIRFA enacted in 1978 provides: "Henceforth it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian…including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites."  42 U.S.C. § 1996.

b) RFRA was enacted in 1993 and requires that federal governmental action that substantially burdens a tribe's religious practice or exercise must promote a compelling interest (rather than simply having a rational basis).

96.    The Plaintiffs' rights have been substantially burdened by the federal governmental action in this case through the issuance of the aforementioned permits, oversight of the excavation, management of Hickory Ground, failure to give notice to Plaintiffs of activities affecting Hickory Ground, failure to consult with tribal leaders regarding such plans, mismanagement of the activities being conducted thereon, abdication of historic preservation responsibilities, denial of Plaintiffs' complaints, and abandonment of statutory and fiduciary duties to protect the Plaintiffs' religious freedoms.

97.    Hickory Ground is a significant and sacred place to HGTT and the MCN traditional practitioners, including Mekko George Thompson, a practitioner of traditional Muscogee (Creek) spiritual beliefs.  Hickory Ground is a sacred site unique to the Plaintiffs and the religious significance of it and the activities that occur there cannot be replicated elsewhere.

98.     Hickory Ground also is a significant and sacred place to Plaintiffs because the remains of their ancestors were ceremonially buried there.  The ceremonial ground located there is regarded as a sacred place for prayer.

99.     Excavation and construction of the Project, buildings, parking lots, or other facilities at Hickory Ground substantially burdens Plaintiffs' exercise of their religious practices because it has and will continue to obliterate and spoil this sacred place for practitioners of Muscogee (Creek) traditional spiritual beliefs.  Further it has and will continue to prevent Plaintiffs from performing significant and important religious activities related to Hickory Ground.  These activities have and will continue to impose a substantial burden on Plaintiffs' exercise of their religion.

### COUNT I
### PRELIMINARY AND PERMANENT INJUNCTION

100.    Plaintiffs adopt and incorporate by reference paragraphs 1 through 99 as if fully set forth herein.

101.    Separately and severally, as shown above, the Defendants have violated several federal statutes, any one of which is sufficient on its own to constitute a violation of Plaintiffs' rights under the law.

102.    Plaintiffs have suffered and will continue to suffer great, irreparable and continuous harm if Defendants are permitted to proceed with the excavation, construction, and disturbance of the premises referred to as Hickory Ground, as described above.

24

103.  Unless a preliminary and permanent injunction is entered enjoining Defendants from excavating, constructing and otherwise disturbing the Hickory Ground premises, Plaintiffs will have no adequate remedy at law to stop such activities and prevent the harms they suffer.   Further, any remedies available at law, such as monetary damages, are inadequate to compensate for the specified injuries.

104.  Considering the balance of hardships between the Plaintiffs and Defendants, the Plaintiffs' injuries outweigh that which the Defendants would suffer if the injunction is granted, therefore a remedy in equity is warranted.  Furthermore, any injuries the Defendants might claim would be caused by their own actions in failing to comply with the requirements of the law as set out above.

105.  Plaintiffs have a substantial likelihood of success on the merits of its claims.

106.  The public's interest would be served by a preliminary injunction, and thereafter a permanent injunction.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court, after appropriate hearing, enter a Preliminary Order and thereafter a Permanent Order: 1) enjoining Defendants from excavating, constructing or in any way disturbing the Hickory Ground premises: 2) ordering Defendants to reopen consultations with Plaintiffs pursuant to NHPA § 101(d)(2) and § 106; 3) ordering Defendants to provide an inventory to the Plaintiffs of the excavated human remains and funerary objects, including the locations where such remains and objects can be found; and 4) to cooperate with Plaintiffs to restore Hickory Ground to its pre-excavation condition and to reinter the remains and objects at the sacred places where they were excavated, in

accordance with Muscogee Creek religious customs and tradition.   Plaintiffs pray for such other relief in equity which this Court deems just and proper.

## COUNT II
## DECLARATORY JUDGMENT

107.   Plaintiffs adopt and incorporate by reference paragraphs 1 through 106 as if fully set forth herein.

108.   This count is brought pursuant to the Declaratory Judgment Act 28 U.S.C. § 2201 and Rule 57, Fed.R.Civ.P.

109.   As noted above, a case of actual controversy exists within the jurisdiction of this Court requiring this Court to declare the rights and other legal relations of the parties.   These include the following controversies:

> A. Th e NPS improperly and illegally entered the NPS Agreement with the PBCI, which allowed PBCI to assume the historic preservation responsibilities of the SHPO.   As such, PBCI has been able to protect its own interests by disregarding the Plaintiffs' rights and PBCI's responsibilities thereto.

> B. Th e Defendants, despite clear obligations under NHPA § 101(d)(2) and § 106 to do so, have failed to meaningfully consult with the Plaintiffs concerning Hickory Ground.

> C. The recent decision by the Supreme Court in Carcieri v. Salazar, clearly indicates that PBCI, which was not a federally recognized tribe in 1934, cannot avail itself of the trust provisions in the IRA. Accordingly, the PBCI cannot conduct gambling activities nor continue with the construction and excavation currently taking place.

26

110.   Each of these aforementioned actions has caused damages and injuries to the Plaintiffs as set out above.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court enter a Judgment vacating the NPS Agreement, ordering Defendants to reopen consultations with Plaintiffs pursuant to NHPA § 101(d)(2) and § 106, and declaring that the acceptance of Hickory Ground into trust by Poarch Band of Creek Indians was void under the Supreme Court's ruling in Carcieri v. Salazar. Plaintiffs further request this Court to Order Defendants to provide an inventory to the Plaintiffs of the excavated human remains and funerary objects, including the locations where such remains and objects can be found, and to cooperate with Plaintiffs to restore Hickory Ground to its pre-excavation condition and to reinter the remains and objects at the places where they were excavated, in accordance with Muscogee Creek religious customs and tradition. Because the damages are continuing to occur, Plaintiffs request an expedited hearing in this matter.

DATED this 12th day of December, 2012.

Respectfully submitted,

William J. Baxley (ASB-7219-A59W)
Email: bbaxley@baxleydillard.com

David McKnight  (ASB-6258-G63S)
Email: dmcknight@baxleydillard.com

Baxley, Dillard, McKnight & James
2008 Third Avenue South
Birmingham, Alabama  35233
Ph: 205.271.1100
Fx: 205.271.1108


OF COUNSEL:
Brendan Ludwick, Esq. [*pro hac vice* to be filed]
Email: Brendan@ludwicklaw.com

Law Office of Brendan Ludwick
5042 Wilshire Blvd. #23340
Los Angeles, California  90036
Ph: 888.929.9602
Fx: 888.929.9603


## DEFENDANTS' ADDRESSES (Plaintiffs will serve):


**Poarch Band of Creek Indians**
5811 Jack Springs Road
Atmore, AL  36502

**Buford L. Rollin**
308 Forrest Avenue
Atmore, AL  36502

**Stephanie Bryan**
2159 Bell Fork Road
Atmore, AL  36502

**Robert McGhee**
92 Stokely Court
Atmore, AL  36502

**David Gehman**
380 Beacon Lane
Atmore, AL  36502

**Arthur Mothershed**
1890 Woodridge Drive
Atmore, AL  36502

**Keith Martin**
359 Ora lane
Atmore, AL  36502

**Sandy Hollinger**
56 Edgar Rackard Lane
Atmore, AL  36502

**Garvis Eugene Sells**
376 Martin Road
Atmore, AL  36502

**Eddie L. Tullis**
188 Lynn McGhee Drive
Atmore, AL  36502

**Robert Glenn Thrower**
22 McRae Street
Atmore, AL  36502

**PCI Gaming Authority**
100 Brookwood Road
Atmore, AL  36502

**Bridget Wasdin**
38211 V R Byrd Road
Bay Minette, AL  36507

**Matthew Martin**
24 Big Creek Road
Atmore, AL  36502

**Billy Smith**
24 Big Creek Road
Atmore, AL  36502

**Tim Manning**
24 Big Creek Road
Atmore, AL  36502

**Flintco, LLC**
c/o C T Corporation System
2 N. Jackson Street, Suite 605
Montgomery, Alabama 36104

**Martin Construction, Inc.**
c/o Phillip Martin, Registered Agent
4839 Poarch Road
Atmore, Alabama 36502

**D.H. Griffin Companies**
c/o C T Corporation System
2 N. Jackson Street, Suite 605
Montgomery, Alabama 36104

**Ken Salazar**
Secretary of the Interior
U. S. Department of the Interior
1849 C Street, NW
Washington, D.C.  20240

**Jonathan B. Jarvis**
Director
National Park Service
1849 C Street, NW
Room 3311
Washington, D.C.  202040

**Kevin K. Washburn**
Assistant Secretary
U.S. Department of the Interior
Indian Affairs
MS-4141-MIB
1849 C Street, NW
Washington, D.C.  20240

**U. S. Department of the Interior**
c/o Ken Salazar, Secretary of the Interior
1849 C Street, NW
Washington, D.C.  20240

**Auburn University**
c/o Office of the General Counsel
101 Samford Hall
Auburn, Alabama 36849