**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| MUSCOGEE (CREEK) NATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action Number: |
| POARCH BAND OF CREEK INDIANS, et al., | ) | 2:12-cv-01079-MHT-CSC |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND**
**SUPPLEMENTAL COMPLAINT**

# TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................................... 3

II.  BACKGROUND ........................................................................................... 3

    A.  Summary of Factual Background ...................................................... 3

    B.  Procedural Background ...................................................................... 6

III.  ARGUMENT ............................................................................................... 7

    A.  Plaintiffs Have Settled with Flintco, LLC, and D.H. Griffin Wrecking Co., Inc. ..... 8

    B.  The Amended Complaint Substitutes New Party Officials ...................................... 8

    C.  The Amended Complaint Adds Detail and Specificity to Plaintiff's Factual Assertions and Causes of Action ............................................................... 9

    D.  The Proposed Amendments Supplement and Modify the Causes of Action and Relief Requested to Reflect Information Learned and Actions Taken by Certain Defendants Since the Filing of the First Amended Complaint ................................ 11

    E.  The Proposed Amendments Meet the "Liberal" Legal Standards Governing Amendment ....................................................................... 12

        1.  *Dismissal of Flintco, LLC, and D.H. Griffin Wrecking Co., Inc.* ...................... 12

        2.  *Substitution of Government Officials* ................................................. 12

        3.  *Supplemental Claims* ...................................................................... 13

        4.  *Amended Allegations and Claims* .................................................... 13

IV.  CONCLUSION ........................................................................................... 21

## I.     INTRODUCTION

On January 16, 2018, this Court granted a motion to stay this case to allow the parties to engage in settlement discussions. Doc. 158. The Court also denied all pending motions in the case with leave to renew. *Id.* This order effectively left Plaintiffs' First Amended Complaint as the operative substantive pleading in the case.

Plaintiffs recently concluded their settlement negotiations. They have settled with two Defendants, but did not reach settlement with the remaining Defendants. With the impending renewal of the litigation process, Plaintiffs respectfully move for leave to file a Second Amended Complaint and Supplemental Complaint ("Second Amended Complaint").[1]

As shown below and in the chart comparing the First Amended Complaint with the Second Amended Complaint—attached as Exhibit B to the accompanying King Declaration—the  Second Amended Complaint: (1) removes the two defendants with whom Plaintiffs reached settlement, (2) substitutes former governmental officials with current government officials, (3) clarifies and adds detail to Plaintiff's factual assertions and causes of action, and (4) updates factual assertions and requested relief as a result of factual developments occurring since the filing of the First Amended Complaint. In support of their motion, Plaintiffs state as follows:

## II.     BACKGROUND

### A.     Summary of Factual Background

This case arises from the Poarch Band of Creek Indians' construction of a casino resort over the sacred grounds and burial places of Plaintiffs' ancestors in Wetumpka, Alabama. Plaintiffs know this sacred place as "Hickory Ground." Poarch acquired Hickory Ground by promising it would always preserve and protect the site. Instead, it removed over 57 bodies of

---

[1] The proposed Second Amended Complaint is attached as Exhibit A to the Declaration of Lauren King in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint ("King Decl.").

Plaintiffs' ancestors, and thousands of Plaintiffs' cultural artifacts, from the sacred place to bulldoze it for construction of Poarch's second casino. Plaintiffs brought this lawsuit, and bring this Second Amended Complaint, to seek redress for this greedy, tragic, outrageous, and illegal act.

The Hickory Ground Tribal Town was one of over forty Tribal Towns that made up the Muscogee (Creek) Nation before its forced removal from Alabama to Oklahoma Territory in the early 1800s on the Trail of Tears. Hickory Ground was the last tribal capital of the Muscogee (Creek) Nation before removal. The members of the Hickory Ground Tribal Town reestablished the Town in Oklahoma after removal. The members of the modern-day Hickory Ground Tribal Town are matrilineal descendants of those buried at Hickory Ground in Alabama, and continue their centuries-old religious ceremonies today. *See* Second Amended Complaint at 7, 13, 72-73.

Although Poarch never historically resided at Hickory Ground, it acquired Hickory Ground in 1980 using federal preservation grant funds. In its application for the funds, Poarch promised that it would "prevent development on the property" and preserve Hickory Ground "without excavation." *See* Second Amended Complaint, Ex. A at 2. As a basis to obtain acquisition funding, Poarch emphasized that Hickory Ground "is of major importance in the history of the Muscogee (Creek) Nation," and that "[t]here is still an existing Hickory Ground tribal town in Oklahoma" who "will be pleased to know their home in Alabama is being preserved." *Id.* Vowing that its purchase of Hickory Ground would save the property from being demolished by development, Poarch cautioned that "[d]estruction of archaeological resources in Alabama … destroy[s] the cultural history of Creek people." *Id.* at 5.

The federal government awarded the requested preservation grant funds to Poarch. Pursuant to the standard terms of preservation grant awards, a protective covenant was placed on

Hickory Ground for 20 years. Despite its repeated promises to protect the sacred site, Poarch began a years-long desecration of Hickory Ground after the covenant expired in 2000 to clear the land for construction of its second casino. Second Amended Complaint at 24-44. At the time, Poarch already had a casino in Atmore; it would soon open a third in Montgomery. *Id.* at 27, 44.

To make way for the $246 million casino resort, Poarch exhumed over 57 human remains of Plaintiffs' ancestors and removed thousands of artifacts in a massive excavation that concluded in 2011. In 2012, Poarch unilaterally reburied many of these remains *away from* their original resting places, using invented ceremonies that disrespected the dead and left the spirits of Plaintiffs' ancestors in perpetual unrest. Many remains and artifacts have never been reburied. Second Amended Complaint at 5-6, 30-37.

The Department of the Interior, National Park Service, and Bureau of Indian Affairs facilitated Poarch's desecration of Hickory Ground by illegally providing assistance to Poarch and failing to comply with applicable law. Martin Construction, a construction company owned by a Poarch tribal member, moved forward with constructing the casino resort despite knowing the devastating effect the construction would have on Plaintiffs. Second Amended Complaint at 12, 20-24, 32-33, 51-52, 55-58, 61-63, 65-75.

Poarch's mistreatment of Plaintiffs' ancestors and cultural items, and the Federal Defendants' facilitation of this mistreatment, violated the National Historic Preservation Act, Native American Graves Protection and Repatriation Act, Archaeological Resources Protection Act, Religious Freedom Restoration Act, Indian Reorganization Act, Poarch's preservation agreement with the National Park Service, and Poarch's promises to protect Hickory Ground "without excavation." In addition, Poarch has been unjustly enriched to the tune of hundreds of

millions of dollars through its breach of its promises to protect Hickory Ground in perpetuity. Second Amended Complaint at 46-48, 53-76.

Plaintiffs brought this action to bring peace to their ancestors by returning them to their intended final resting places in accordance with their religious duties. Plaintiffs seek to hold Poarch to its promises to protect and preserve Hickory Ground. Hickory Ground should be restored, to the greatest extent possible, to its condition prior to construction of the casino. The remains and artifacts should be returned to their original resting places.

**B.      Procedural Background**

Initial Complaint and Motions to Dismiss. Plaintiffs filed this lawsuit on December 12, 2012 (Doc. 1), filing a First Amended Complaint on January 8, 2013 to correct the names of three defendants (Doc. 57 at 1-2). Auburn University alone answered the Complaint (Doc. 73), and all other Defendants filed motions to dismiss the Complaint prior to filing responsive pleadings (Docs. 74-77, 90, 94-95).

Motion for Preliminary Injunction Hearing. In September 2013, Plaintiffs filed a Motion for Preliminary Injunction Hearing, asking for a hearing on the request for preliminary injunction in their Complaint. *See* Doc. 1 at 25-26. This Court held a telephonic hearing on that motion on September 6, 2013. Doc. 115.

Construction Defendants' Second Motions to Dismiss. In January 2015, Defendants Flintco, LLC, D.H. Griffin Wrecking Co., Inc., and Martin Construction, Inc. (collectively, the "Construction Company Defendants") filed second motions to dismiss, alleging that Plaintiffs' claims against those Defendants had become moot because the casino construction had been completed. *See* Docs. 124, 126, 138.

Discovery Motions. In response to Plaintiffs' requests for discovery, all Defendants except for Auburn University filed motions to stay discovery and/or for protective orders. Docs.

127-128, 130-137. Despite Defendants' refusal to produce discovery, Plaintiffs pressed forward with the case by collecting relevant evidence through other means, including hiring a private investigator and submitting Freedom of Information Act ("FOIA") requests to federal government agencies. King Decl., ¶4.

Settlement Negotiations. In 2017 and 2018, Plaintiffs and Defendants Poarch Band, PCI Gaming Authority, and Poarch Band and PCI Gaming Authority officials (collectively, the "Tribal Parties") engaged in settlement discussions. On December 5, 2017, the Tribal Parties filed a joint motion to stay the case until April 1, 2018 to allow for settlement discussions. Doc. 155. The Court granted that motion. Doc. 156. On April 4, 2018, the Tribal Parties filed another joint motion to continue the stay until July 1, 2018 to allow for further settlement discussions. Doc. 157. The Court granted that motion as well. Doc. 158. Despite good faith efforts on the part of all Tribal Parties, these settlement efforts failed in the fall of 2018. King Decl., ¶5.  Plaintiffs then engaged in discussions with the Construction Company Defendants. Those discussions concluded in May of this year. Plaintiffs have settled with Flintco, LLC, and D.H. Griffin Wrecking Co., Inc. King Decl., ¶6.

Denial of All Pending Motions. When this Court granted the Tribal Parties' first motion to stay the case pending settlement discussions, it also ordered that "all pending motions are denied with leave to renew." Doc 156. This order effectively rendered Plaintiffs' First Amended Complaint as the operative substantive pleading in the case.

## III.    ARGUMENT

Federal Rule of Civil Procedure 15(a) allows for leave to amend pleadings, and further provides that "leave shall be freely given when justice so requires." The present Motion for Leave to Amend presents such an occasion, for the following reasons:

**A.      Plaintiffs Have Settled with Flintco, LLC, and D.H. Griffin Wrecking Co., Inc.**

The Second Amended Complaint removes Flintco, LLC, and D.H. Griffin Wrecking Co., Inc. as Defendants in light of Plaintiffs' settlements with those parties.

**B.      The Amended Complaint Substitutes New Party Officials**

Numerous officials for the Defendants have been succeeded by new elected or appointed officials, as summarized below. Accordingly, the Second Amended Complaint substitutes the names of former government officials with the names of the current officials for the claims in which the officials are being sued in their official capacities.

| Party | Former Party Official(s) | Current Party Official(s) |
|---|---|---|
| Poarch Band of Creek Indians | Buford Rolin, Tribal Council Member | Charlotte Meckel, Tribal Council Member |
| | David Gehman, Tribal Council Member | Dewitt Carter, Tribal Council Member |
| | Robert Thrower, Tribal Historic Preservation Officer | Larry Haikey, Tribal Historic Preservation Officer |
| PCI Gaming Authority | Keith Martin, Board Member | Teresa Poust, Board Member |
| | Bridget Wasdin, Board Member | Westly Woodruff, Board Member |
| | Matthew Martin, Board Member | Venus McGhee Prince, Board Member |
| | Billy Smith, Board Member | Stuart Altman, Board Member |
| United States Department of Interior | Ken Salazar, Secretary of the U.S. Department of the Interior | David Bernhardt, Secretary of the U.S. Department of the Interior |
| | Jonathan Jarvis, Director of the National Park Service | Dan Smith, Acting Director of the National Park Service |
| | Kevin Washburn, Assistant Secretary, Bureau of Indian Affairs | Tara MacLean Sweeney, Assistant Secretary, Bureau of Indian Affairs |

**C.    The Amended Complaint Adds Detail and Specificity to Plaintiff's Factual Assertions and Causes of Action**

To aid the Court in its assessment of Plaintiffs' claims, Plaintiffs have added detail and specificity to their factual assertions. For example, Plaintiffs provide more detail regarding what procedures are involved in a phase III archaeological investigation to help the Court understand the extreme disturbance—and resulting violation of Plaintiffs' religious duties—caused to human remains, cultural items, and other artifacts during such excavation.

Furthermore, as shown in the chart comparing the First Amended Complaint with the Second Amended Complaint, Plaintiffs' proposed amendments also clarify causes of action that were included in the First Amended Complaint but were not thoroughly detailed in the "Causes of Action" section of the complaint. For example, Paragraph 2 of the First Amended Complaint states that Poarch "shall be **unjustly enriched** as a result of its wrongful and unlawful conduct, unless injunctive relief is granted" (emphasis added.) Paragraph 23 of the First Amended Complaint alleged that Poarch's application for federal preservation grant funds to acquire Hickory Ground "**fraudulently misrepresented** to … [the Muscogee (Creek) Nation] and the United States that the purpose of the acquisition was to preserve the historic property" without excavation for the benefit of all Creek Indians, including Hickory Ground Tribal Town. (Emphasis added.) Paragraph 23 further avers that the Muscogee (Creek) Nation and Hickory Ground Tribal Town were **intended third party beneficiaries** of PBCI's agreement to preserve Hickory Ground." (Emphasis added.) Accordingly, the Second Amended Complaint expressly includes causes of action for unjust enrichment and promissory estoppel. It does not include a request for a preliminary injunction, as the casino construction has been completed. However, the Second Amended Complaint *does* request injunctive relief to return Hickory Ground to its pre-construction and pre-excavation state, just as the First Amended Complaint did.

Additionally, Paragraphs 38 and 39 of the First Amended Complaint allege that certain Defendants' knowledge of the religious and cultural importance of Hickory Ground to Plaintiffs made it "for[e]seeable that excavating the human remains and associated funerary objects of Plaintiffs' ancestors would cause emotional harm to Plaintiffs," and that "Plaintiffs are experiencing severe emotional distress because of the violation of the burial sites of their ancestors and the violation of their religious and cultural beliefs, including but not limited to their inability to respect their ancestors, pray on the ceremonial ground, and keep Hickory Ground sacred." The Second Amended Complaint expressly includes a cause of action for outrage by Mekko Thompson against the individuals who served as Poarch officials at the time the excavation and construction took place.[2]

As both the First and Second Amended Complaint explain, certain claims depend on the Court's ruling on Plaintiff's claim that the Department of the Interior did not have authority under the Indian Reorganization Act to take Hickory Ground into trust on Poarch's behalf. First Amended Complaint at 7, 11-12, 27; Second Amended Complaint at 20-24, 45-64. This determination is critical because it will resolve whether Hickory Ground is federal/tribal land or fee land that is subject to state law. The structure of the "Causes of Action" and "Prayer" sections in the Second Amended Complaint provide greater specificity regarding the operative claims and requests for relief depending on the classification of the land at issue. *See* Second Amended Complaint at 46-64, 76-78.

---

[2] These individuals were all named as Defendants in the First Amended Complaint, and thus had notice of the claims against them, *see* Fed. R. Civ. P. 15(c), but several are now former officials. Buford Rolin, David Gehman, Bridget Wasdin, Matthew Martin, and Billy Smith are no longer on the Poarch Tribal Council or PCI Gaming Authority. All individuals who were officials for these entities at the time of the excavation and construction are sued by Mekko Thompson for outrage. They are sued in their individual capacities in accordance with the United States Supreme Court's ruling in *Lewis v. Clarke*, 561 U.S. ___, 137 S. Ct. 1285 (2017) that sovereign immunity does not bar tort claims asserted against tribal officers or employees in their personal capacities.

The Second Amended Complaint also clarifies that the burden on Plaintiffs' religion caused by certain Defendants violates not only the Religious Freedom Restoration Act, but also the First Amendment of the United States Constitution and the Religious Land Use and Institutionalized Persons Act. *See* Second Amended Complaint at 59-61.

**D.      The Proposed Amendments Supplement and Modify the Causes of Action and Relief Requested to Reflect Information Learned and Actions Taken by Certain Defendants Since the Filing of the First Amended Complaint**

As noted above, Plaintiffs' proposed amendments add detail to their factual assertions. Much of this detail, such as the overlay showing exactly where the casino resort was constructed relative to the locations of the human remains, cultural items, and other artifacts at Hickory Ground, is the result of Plaintiffs' evidence-gathering efforts while Defendants were stonewalling discovery. King Decl., ¶4.

Additionally, the Second Amended Complaint contains supplemental claims under Federal Rule of Civil Procedure 15(d) alleging facts and causes of action relating to Poarch's and Martin Construction's resumption of construction and other actions after the First Amended Complaint was filed. On information and belief, the construction continued through at least 2014.

Finally, the Second Amended Complaint adds detail to its allegations that Interior lacked authority under the Indian Reorganization Act to take Hickory Ground into trust for Poarch. This detail conforms to the M-Opinion published in March 2014 by the Office of the Solicitor of the Department of the Interior.[3] Plaintiffs engaged in in-depth research to uncover additional facts relevant to their amended allegations under the Indian Reorganization Act, such as the statements made by Poarch in its briefing in the 1950s Indian Claims Commission proceedings and in its

---

[3] This opinion can be found at https://www.doi.gov/sites/doi.opengov.ibmcloud.com/files/uploads/M-37029.pdf.

letters to the Solicitor's Office and National Indian Gaming Commission in the 2000s relating to gaming on Poarch's Tallapoosa/ Montgomery land.

**E.    The Proposed Amendments Meet the "Liberal" Legal Standards Governing Amendment**

Here, "[i]n the absence of a dispositive scheduling order, whether leave to amend should be granted is governed by the more liberal standard set forth in Rule 15(a)." *McKinley v. Kaplan*, 177 F.3d 1253, 1257 (11th Cir. 1999). Plaintiffs' proposed amendments satisfy the applicable legal standards and will facilitate resolution of this case on the merits.

**1.    *Dismissal of Flintco, LLC, and D.H. Griffin Wrecking Co., Inc.***

Dismissal of individual parties or discrete claims from a case is appropriately accomplished through Rule 15. *Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018) (holding that Rule 41(a) may be used to dismiss only an action in its entirety).

**2.    *Substitution of Government Officials***

When a governmental official has been succeeded during the pendency of an action, Rule 25(d) provides that "[t]he officer's successor is automatically substituted as a party," and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

With respect to former and current officials sued in their individual capacities for outrage, each of these individuals were named as Defendants in the First Amended Complaint, and thus had notice of the claims against them. Fed. R. Civ. P. 15(c); *see also Sandoval v. Hagan*, 7 F. Supp. 2d 1234, 1247 (M.D. Ala. 1998), *rev'd on other grounds*, 532 U.S. 275 (2001) (finding no prejudice to proposed addition of official capacity claim where defendant was already named as a defendant and thus "has had ample notice of this action.").

### 3.     *Supplemental Claims*

The Eleventh Circuit recognizes that "[a] supplemental pleading is an appropriate vehicle by which to 'set forth new facts in order to update the earlier pleading, or change the amount or nature of the relief requested in the original pleading.'" *Lussier v. Dugger,* 904 F.2d 661, 670 (11th Cir. 1990) (quoting 6A Charles Alan Wright, Arthur R. Miller, & M. K. Kane, 4 *Federal Practice and Procedure* § 1504 (footnotes omitted)). Leave to file a supplemental pleading "should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." 6A Charles Alan Wright & Arthur R. Miller *et al., Federal Practice and Procedure* § 1504 (3d ed. 2018). This is a similar standard to that used in determining whether to grant leave to amend pursuant to Rule 15(a)(2), with the notable exception being that any supplementation must be based on a "transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Plaintiffs' supplemental claims appropriately update their earlier complaint to reflect certain Defendants' actions, and changes in the law, since Plaintiffs filed their First Amended Complaint.

### 4.     *Amended Allegations and Claims*

Federal Rule of Civil Procedure 15 places leave to amend, after a brief period in which a party may amend as of right, within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). In exercising this discretion, a court should be guided by the underlying purpose of Rule 15 to facilitate a decision on the merits, rather than on the pleadings or technicalities. *Id.* at 182.[4]

---

[4] Because leave to amend is favored and is to be freely given, district courts must provide an explanation of the reasoning underlying a decision to deny it. *See Higdon v. Tusan*, 673 F. App'x 933, 937 (11th Cir. 2016).

The United States Supreme Court has instructed the lower federal courts to heed carefully the mandate of Rule 15(a) to freely grant leave to amend when justice so requires. *Id.* at 182. Therefore, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* "A district court's discretion to deny leave to amend a complaint is 'severely restricted' by Fed. R. Civ. P. 15, which stresses that courts should freely give leave to amend 'when justice so requires.'" *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) (quoting *Thomas v. Davie*, 847 F.2d 771, 773 (11th Cir. 1988)).  Indeed, amendments to the pleadings are to be freely granted "even after a complaint has been dismissed." *Warner v. Alexander Grant & Co.*, 828 F.2d 1528, 1531 (11th Cir. 1987) (quoting J. Moore, Moore's Federal Practice para. 15.02[1] (2d ed. 1948)). "Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Thomas*, 847 F.2d at 773 (quotation and citation omitted).

This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties. "[A]n amendment adding new claims and parties usually will speak for itself. During the course of pretrial proceedings new information may come to light, and in the exchange of pleadings new strategy may develop." *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443-44 (11th Cir. 1985). Indeed, a plaintiff need not provide an explanation for adding closely related claims and parties, as lack of such explanation is not a "substantial reason" justifying denial of a motion for leave to amend. *Id.* Furthermore, the policy favoring resolution of disputes on the merits requires courts to consider "the potential

---

"[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the  Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

injury to a plaintiff if denied the right to amend." *Stevens v. Gay*, 792 F.2d 1000, 1003 (11th Cir. 1986).

Five other factors are taken into account to assess the propriety of a motion for leave to amend: undue delay, undue prejudice to the opposing party, futility of amendment, bad faith, and repeated failure to cure deficiencies by amendments previously allowed. *Foman*, 371 U.S. at 182.

Among these five factors, it is the consideration of prejudice to the opposing party that carries the greatest weight. *United States v. Hougham*, 364 U.S. 310, 316 (1960); *see also Middle Atl. Utils. Co. v. S. M. W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968) ("trial courts should normally focus on the resultant prejudice to defendant"); *Eminence Capital, LLC, v. Aspeon, Inc.*, 316 F.3d 1048 1052 (9th Cir. 2003) (Prejudice is the "touchstone of the inquiry under rule 15(a)."). The burden to prove prejudice lies with the party opposing amendment. *Allstate Ins. Co. v. Regions Bank*, No. 14-0067-WS-C, 2014 U.S. Dist. LEXIS 115540, at *27-29 (S.D. Ala. Aug. 19, 2014). For the following reasons, Defendants cannot demonstrate the substantial prejudice that would justify denial of leave to amend.

Here, Plaintiffs seek to amend their First Amended Complaint by (1) removing parties with whom Plaintiffs have settled; (2) substituting former governmental official defendants with current officials; (3) adding specificity to their factual allegations and causes of action; (3) supplementing and modifying the factual allegations and causes of action to reflect information learned and actions taken by certain Defendants since the First Amended Complaint was filed.

There Has Been No Undue Delay. While there has been delay, there has not been any undue delay.[5] Plaintiffs filed the First Amended Complaint on January 8, 2013 (Doc. 57).

---

[5] Undue delay is delay that unfairly prejudices the nonmoving party or imposes unwarranted burdens upon the court. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004).

Plaintiffs then filed a motion for an immediate hearing on the preliminary injunction request that was included in their First Amended Complaint. *See* Doc. 1 at 25-26.

As their preliminary injunction request was pending,[6] Plaintiffs also commenced discovery requests, which were met with motions to stay discovery and/or for protective orders from all Defendants except Auburn University. Docs. 127-128, 130-137. With those motions pending, Plaintiffs began collecting relevant evidence through other means, including hiring a private investigator and submitting FOIA requests to federal government agencies. King Decl., ¶4. Much of the added detail in the Second Amended Complaint reflects the information Plaintiffs obtained through those efforts. *Id.*

With a change in leadership at both Poarch and the Muscogee (Creek) Nation by 2017, the Tribal Parties decided it would be worthwhile to engage in discussions to see if the new leadership could reach settlement. As initial discussions were fruitful, the Tribal Parties filed a joint motion to stay the case on December 5, 2017, and again on April 4, 2018, to allow for further settlement discussions.  This stay of the litigation cannot be considered prejudicial when it was agreed to by the parties.

When those discussions unfortunately did not lead to settlement, Plaintiffs pursued settlement with the Construction Company defendants. As mentioned above, those discussions concluded in May 2019. Plaintiffs did not delay in filing this Second Amended Complaint after conclusion of those negotiations and exhaustion of their unilateral evidence-gathering efforts.

When this Court denied all pending motions concurrently with its grant of the Tribal Parties' first motion to stay the case, it effectively rendered Plaintiffs' First Amended Complaint as the only operative substantive pleading in the case. Among all Defendants, only Auburn has answered Plaintiffs' First Amended Complaint (Doc. 73); all other Defendants filed motions to

---

[6] The Court had not yet ruled on this request at the time it issued the first stay in this case in December 2017.

dismiss the Complaint prior to filing responsive pleadings (Docs. 74-77, 90, 94-95). However, Auburn continues to be named as a Defendant "solely to the extent that this Court enters orders concerning the possession, custody, control, or relocation of" cultural items within Auburn's current possession or control. Second Amended Complaint at 12. The passage of time is not prejudicial to Auburn, as Plaintiffs do not seek damages against it, only the return of whatever human remains or artifacts it has in its possession. Second Amended Complaint at 12.

Thus, no Defendant against whom Plaintiffs are seeking restorative injunctive relief or damages has answered the complaint. No trial date has been set, nor has this Court ruled on any dispositive motion. Instead, the Court denied *all* pending motions when it granted the Tribal Parties' first motion to stay the case, effectively placing the parties back at square one. Permitting amendment in this case will not require additional discovery nor will it delay the case in any fashion. Indeed, discovery has not yet begun. Again, "[i]n the absence of a dispositive scheduling order, whether leave to amend should be granted is governed by the more liberal standard set forth in Rule 15(a)." *McKinley*, 177 F.3d at 1257.

While the Defendants may argue that the Plaintiffs could have moved at an earlier time to amend, this argument by itself does not constitute an adequate basis for denying leave to amend. "[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir. 1989) (citations omitted), *rev'd on other grounds*, 499 U.S. 530 (1991); *see also United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). "The mere fact that an amendment is offered late in the case is … not enough to bar it." 3 Moore's Federal Practice § 15.08(4) at 15-102.

The facts here are squarely in line with several other cases where federal courts of appeals have found that leave to amend was warranted.

In *W.R. Huff Asset Mgmt. Co. v. Kohlberg, Kravis, Roberts, KKR Assocs. LP*, 209 F. App'x 931, 934-35 (11th Cir. 2006), the Eleventh Circuit held that a plaintiff's proposed amended complaint posed "no undue burden on [the defendant] when the litigation -- though long-lived -- had not yet progressed beyond the pleading stage," and where "[t]here has been no discovery, nor a trial date set, and the claims presented in the new complaint do not differ in substance from those raised previously." *Id.* at 935. Nor was there a "waste of judicial resources" where "no federal judges have yet considered the substance of [the plaintiff's] complaints." *Id.* The court in *Huff* also held that the motion to amend was not untimely where, "[a]lthough this case has had an undeniably long procedural history, the delays to which it has been subject have generally been no fault of [the plaintiff's], including the fact that "the district court still had not ruled on [the plaintiff's prior] Complaint two years later when [the plaintiff] moved for leave to file a Fourth Amended Complaint." *Id.*

In *Hanson v. Hunt Oil Co.*, 398 F.2d 578 (8th Cir. 1968), the Eighth Circuit found that the trial court abused its discretion in denying the plaintiff's motion to amend his complaint to clarify a cause of action on the day of trial, holding that "the amendment tendered on the day of trial clears up any existing deficiency in the pleading." *Id.* at 581.

In *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973), while considering a motion that was made five years after a third party complaint had been filed, the Ninth Circuit Court of Appeals specifically stated, "[W]e know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend." *Id.* at 1190. The Ninth Circuit Court of Appeals went on to explain, "The purpose of the litigation process is to vindicate meritorious claims. Refusing, solely because of delay, to permit an amendment to a pleading in order to state a potentially valid claim would hinder this purpose while not promoting any other sound judicial

policy. *Id.* at 1191. "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Id.*

<u>Allowing Amendment Will Not Prejudice Defendants</u>.

To satisfy its burden of showing undue prejudice, a party opposing amendment must "demonstrate that its ability to present its case would be seriously impaired were the amendment allowed." *Allstate Ins. Co. v. Regions Bank*, No. 14-0067-WS-C, 2014 U.S. Dist. LEXIS 115540, at *28-29 (S.D. Ala. Aug. 19, 2014) (quoting *Air Products and Chemicals, Inc. v. Eaton Metal Products Co*., 256 F. Supp. 2d 329, 332 (E.D. Pa. 2003)). "It is well-settled that '[a]llegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice.'" *Id.* at *29 (quoting *Scott v. Chipotle Mexican Grill, Inc*., 300 F.R.D. 193, 2014 U.S. Dist. LEXIS 90785, 2014 WL 2975346, *6 (S.D.N.Y. July 2, 2014)). In other words, "the sort of inherent, run-of-the-mill prejudice occurring whenever a Rule 15 motion is granted" is not sufficient to deny leave to amend. *Id.* at *30.

Among other things, the Plaintiffs simply seek to add specificity to their allegations in a situation where the Defendants already are aware of the circumstances giving rise to the action. *See, e.g., Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 195 (4th Cir. 2009); *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (noting that prejudice "could hardly flow" from adding specificity to the allegations); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case."). There are no new allegations that prejudice the Defendants, as the substance of Plaintiffs' claims is the same as the First Amended Complaint. In that respect, this case is similar to *Landon v. Agatha Harden, Inc.*, 6 F. Supp. 2d 1333 (M.D. Ala.

1998), where this Court found that there would be no "substantial or unjust hardship" to Defendants from Plaintiff's amendments stemming from her retention of additional counsel who "undertook to 'clean up' the Complaint, deleting such claims and counts as were not completely supported by the facts, and reframing counts to afford Plaintiff all the relief as to which she would be entitled." *Id.* at 1336.

Furthermore, to date, there is no trial date pending. There is no pretrial conference scheduled. And because discovery has yet to begin, there will be no need to reopen discovery and therefore delay the proceedings.

There Is No Evidence Of Bad Faith. The Plaintiffs have not sought to prolong the litigation by adding baseless legal theories or for an improper purpose. The Plaintiffs have not sought to include claims that would harass or unfairly burden the Defendants or this Court. Plaintiffs' proposed claims will not greatly alter the nature of this litigation or require the Defendants to undertake, at a late hour, an entirely new course of defense. Thus, any claim of bad faith or unfair prejudice by the Defendants is unpersuasive. *See Howey*, 481 F.2d at 1191 (finding no unfair prejudice when defendant "was fully prepared to litigate" new issues raised in amended complaint).

Plaintiffs' Proposed Claims Cannot be Considered Futile. Leave to amend a complaint is futile "when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *McLaughlin v. Pasco Cnty. Sheriff's Office*, 510 F. App'x 880, 883 (11th Cir. 2013) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). As detailed in the proposed Second Amended Complaint, each claim advanced by Plaintiffs is well-supported by both law and fact. Additionally, the attached comparison chart and

the discussion above on pages 9-10 show that Plaintiffs' clarified claims relate back to the First Amended Complaint and are thus not time-barred.

   <u>Plaintiffs' Complaint is Not Deficient, and There Has Been No Failure to Cure Deficiency</u>. Plaintiffs have not previously requested leave to amend, and there has been no ruling regarding the sufficiency of Plaintiffs' claims. Therefore, Plaintiffs have not repeatedly failed to cure deficiencies.

## IV.   CONCLUSION

   Plaintiffs' proposed amendments are appropriate and consistent with case law. The Plaintiffs' proposed amendments will not unfairly prejudice the Defendants.  Most importantly, the proposed amendments will clarify the claims at issue in the case and promote the resolution of those claims on the merits.  Therefore, liberally applying the policy of favoring amendments to pleadings, Plaintiffs respectfully request that this Court enter an order granting Plaintiffs leave to file their Second Amended Complaint.


   Respectfully submitted this 5th day of June, 2019.



OF COUNSEL
Lauren J. King
Email: lauren.king@foster.com
Foster Pepper, PLLC
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Tel: 206-447-6286
*Counsel for Plaintiffs*
(*Admitted Pro Hac Vice*)

 s/ William J. Baxley
William J. Baxley (ASB-7219-A59W)
Email: BBaxley@baxleydillard.com

Stewart Davidson McKnight , III (ASB-6258-G63S)
Email: dmcknight@baxleydillard.com
Baxley, Dillard, McKnight, James & McElroy
2700 Highway 280
Suite 110 East
Birmingham, AL 35223
Tel: 205-271-1100
*Counsel for Plaintiffs*

## Certificate of Service

I hereby certify that on the 5th day of June, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Charles A. Dauphin (ASB-5833-H65C)<br>Dauphin Paris, LLC<br>300 Vestavia Parkway, Suite 3400<br>Vestavia Hills, AL 35216<br>Phone: 205.979.6019<br>Email: cdauphin@dauphinparis.com<br><br>OF COUNSEL:<br><br>David C. Smith, D.C. Bar No. 998932<br>Kilpatrick Townsend & Stockton LLP<br>607 14th Street, N.W., Suite 900<br>Washington, D.C. 20005-2018<br>Phone: 202.508.5865<br>Email: dcsmith@ktslaw.com<br>(Admitted *pro hac vice*)<br><br>Mark H. Reeves, Georgia Bar No. 141847<br>Kilpatrick Townsend & Stockton LLP<br>Enterprise Mill<br>1450 Greene Street, Suite 230<br>Augusta, GA 30901<br>Phone: 706.823.4206<br>Email: mreeves@ktslaw.com<br>(Admitted *pro hac vice*)<br><br>*Attorneys for Tribal Defendants* | Dennis Mitchell Henry<br>Frank Eady Bankston , Jr.<br>Webster, Henry, Lyons, White, Bradwell, & Black PC<br>105 Tallapoosa Street<br>Montgomery, AL 36104<br>Email: mitch@websterhenry.com<br>Email: fbankston@websterhenry.com<br>*Counsel for Defendant Martin Construction, Inc.* |
| James Joseph DuBois<br>U. S. Attorney's Office<br>PO Box 197<br>Montgomery, AL 36101<br>Email: james.dubois2@usdoj.gov<br>*Counsel for Defendant United States* | Jody Helen Schwarz<br>U.S. Department of Justice, Environment and Natural Resource<br>P.O. Box 7611<br>Washington, DC 20044<br>Email: jody.schwarz@usdoj.gov<br>*Counsel for Defendant United States* |
| David Randall Boyd | Lee Ford Armstrong |

| | |
|---|---|
| Griffin Lane Knight<br>Balch & Bingham LLP<br>PO Box 78<br>Montgomery, AL 36101<br>Email: dboyd@balch.com<br>Email: lknight@balch.com<br>*Counsel for Defendant Auburn University* | Auburn University<br>101 Samford Hall<br>Auburn University, AL 36849<br>Email: armstlf@auburn.edu<br>*Counsel for Defendant Auburn University* |
| Joseph Lister Hubbard<br>William Allen Sheehan<br>Capell Howard PC<br>PO Box 2069<br>Montgomery, AL 36102<br>334-241-9000<br>Fax: 334-323-8888<br>Email: jlh@chlaw.com<br>Email: was@chlaw.com<br>*Counsel for Defendant Flintco, LLC* | Daniel E Gomez<br>Larry Bailey Lipe<br>Paige N. Shelton<br>Conner & Winters, LLP<br>4000 One Williams Center<br>Tulsa, OK 74172<br>Email: dgomez@cwlaw.com<br>Email: llipe@cwlaw.com<br>Email: pshelton@cwlaw.com<br>*Counsel for Defendant Flintco, LLC* |
| Helen Johnson Alford<br>Christina May Bolin<br>Christian & Small<br>One Timber Way<br>Suite 101<br>Daphne, AL 36527<br>251-415-9214<br>Fax: 251-432-1700<br>Email: halford@csattorneys.com<br>Email: cbolin@csattorneys.com<br>*Defendant D.H. Griffin Wrecking Company, Inc.* | |

s/ William J. Baxley
Counsel