# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 11, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-11643-DD
Case Style:  Muscogee (Creek) Nation, et al v. Buford Rollin, et al
District Court Docket No:  2:12-cv-01079-MHT-CSC

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellee(s) / Respondent(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11643

_____

MUSCOGEE (CREEK) NATION,
a federally recognized Indian tribe,
HICKORY GROUND TRIBAL TOWN,
GEORGE THOMPSON,
Mekko, individually and as traditional representative
of the lineal descendants of those buried at
Hickory Ground Tribal Town in Wetumpka, Alabama,

Plaintiffs-Appellants,

*versus*

BUFORD ROLLIN,
PBCI Tribal Council Member, in his official
capacity, et al.,

2                      Opinion of the Court                 21-11643

                                                      Defendants,

BILLY SMITH,
in his official capacity as a PCI Gaming Board member,
POARCH BAND OF CREEK INDIANS,
a federally recognized tribe,
STEPHANIE A. BRYAN,
individually and in her official capacity as Chair
of the Poarch Band of Creek Indians ("Poarch") Tribal Council,
ROBERT R. MCGHEE,
individually and in his official capacity as Vice Chair of
Poarch Tribal Council,
AMY BRYAN,
in her official capacity as Treasurer of the Poarch Band
of Creek Indians Tribal Council, et al.,

                                            Defendants-Appellees.

                      _____


                Appeal from the United States District Court
                    for the Middle District of Alabama
                D.C. Docket No. 2:12-cv-01079-MHT-CSC
                      _____

Before WILLIAM PRYOR, Chief Judge, and LUCK and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge, delivered the opinion of the Court, in which Circuit Judge HULL joined in full, and in which Circuit Judge LUCK joined except as to Part III-B.

This appeal requires us to decide whether the district court erred when it ruled that officials of the Poarch Band of Creek Indians enjoy sovereign immunity, under *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), from a suit filed by the Muscogee (Creek) Nation about the excavation and development of a burial site near Wetumpka, Alabama. After the Poarch Band and Auburn University excavated the site, the Poarch Band announced plans to develop a hotel and casino on it. In response, the Muscogee Nation sued the Poarch Band, its gaming authority, officials from both, and other defendants. The district court dismissed the complaint. Because the district court failed to review that complaint claim by claim to determine whether the Poarch officials enjoy sovereign immunity, we vacate its order and remand.

## I. BACKGROUND

We explain the background of this appeal in three parts. First, we explain the history of Hickory Ground, the burial site, and the Muscogee Nation's relationship to it. Second, we explain the history of the Poarch Band and its relationship to Hickory Ground. Third, we explain the Muscogee Nation's lawsuit.

A. *Hickory Ground and the Muscogee Nation*

Hickory Ground is a sacred ceremonial ground of the Muscogee Nation that sits on the east bank of the Coosa River. Hickory Ground was the Muscogee Nation's last capital before its forced removal on the Trail of Tears. Like many tribal towns, Hickory Ground contained ceremonial grounds, a council house, a plaza, and graves containing human remains and funerary objects. Because of its historical significance, Hickory Ground is a state-registered archaeological site and was placed on the National Register of Historic Places in 1980.

Although the Muscogee Nation left Hickory Ground on the Trail of Tears, the tribal town that started there, Hickory Ground Tribal Town, persists as a political entity in Henryetta, Oklahoma. Affiliation with Hickory Ground Tribal Town is matrilineal, and the current members of that Tribal Town in Oklahoma are the descendants of the Muscogee buried at Hickory Ground. Each tribal town is led by its "mekko," or chief. Mekko George Thompson has been the "kosa mekko," or Coosa Chief, of Hickory Ground Tribal Town since 1977.

Hickory Ground remains a place of spiritual, religious, and cultural importance to the Muscogee Nation, where Mekko Thompson and other members of the Tribal Town have cultural and ancestral ties. Graves like the ones at Hickory Ground have special significance in Muscogee culture and religion because descendants have a duty to care for their ancestors' graves, which may be disturbed only if certain protocol are followed. Members

of Tribal Town governance, like Mekko Thompson's ancestors, also have designated burial locations at Hickory Ground.

### B. *The Poarch Band of Creek Indians*

The Poarch Band of Creek Indians is a federally recognized tribe that "began as an autonomous town . . . in the late 1700's with a continuing political connection to the [Muscogee] Nation." Final Determination for Federal Acknowledgement of the Poarch Band of Creeks, 49 Fed. Reg. 24083, 24083 (June 11, 1984). They did not leave Alabama on the Trail of Tears with the rest of the Muscogee; they remained and settled permanently near Atmore, which is over 100 miles southwest of Hickory Ground. *Id.* At the time of their recognition in 1984, nearly all Poarch Band members could "document descendancy from the historic [Muscogee] Nation." *Id.*

The Poarch Band purchased Hickory Ground in fee simple in 1980 with funds from a federal preservation grant. In the letter to the Alabama Historical Commission that sought the funding, the Poarch Band explained that they wanted Hickory Ground "principally" as a "protection measure" to prevent development. They explained that they would conduct a "scientifically sound archaeological program . . . to mitigate or minimize effects upon the historic resources" before developing the property. And they asserted that the Muscogee people in Oklahoma "will be pleased to know their home in Alabama is being preserved."

As a condition of the funding, the Poarch Band covenanted that for 20 years they would "preserve the historical and archaeological integrity of the property . . . to protect and enhance those

qualities that made the property" eligible for listing in the National Register of Historic Places. After the Poarch Band's recognition in 1984, the United States, through the Secretary of the Interior, accepted legal title to the majority of Hickory Ground to hold it in trust for the benefit of the Poarch Band. In 1999, the National Park Service delegated its historic preservation responsibilities for Hickory Ground to the Poarch Band under the National Historic Preservation Act. *See* 16 U.S.C. § 470a(d)(2) (1999).

After the 20-year covenant expired in 2000, the Poarch Band worked with archaeologists from Auburn University to excavate Hickory Ground for development. In 2001, the Bureau of Indian Affairs investigated whether construction activities near the site violated the Archaeological Resources Protection Act and found no violation. *See id.* §§ 470aa–470mm. In 2002, the Muscogee Nation then objected to excavation and wrote the Poarch Band and the Bureau. But, in 2003, the Bureau issued an excavation permit to Auburn under the Archeological Resources Protection Act. Auburn archaeologists recovered at least 57 sets of human remains and associated funerary artifacts. The Muscogee Nation alleges that the kind of excavation that Auburn performed does not recover all items from the site, so some artifacts from Hickory Ground are likely lost forever.

### C. The Muscogee Nation's Lawsuit

In 2012, the Muscogee Nation, the Tribal Town, and Mekko Thompson filed this lawsuit after the Poarch Band announced plans to develop a hotel and casino on Hickory Ground. They filed

an amended complaint a month later. But the casino opened in 2014 despite ongoing litigation. The district court then stayed the case pending settlement negotiations. The negotiations were ultimately unsuccessful, so the Muscogee Nation filed a second amended complaint in 2020.

The complaint alleges 11 claims under federal and state law against the Poarch Band, its gaming authority, and officials of both; Martin Construction, Inc.; Auburn; the Department of the Interior, National Park Service, and Bureau of Indian Affairs; and officials from those agencies. Specifically, those Poarch officials include 9 current members of the Poarch Tribal Council, 3 former members, the Tribal Historic Preservation Officer, and 5 members of the gaming authority. Because the Muscogee Nation does not appeal the ruling that the Poarch Band and its gaming authority enjoy sovereign immunity, we discuss the claims only as they relate to ruling that the Poarch officials also enjoy sovereign immunity.

The complaint divides the claims into three sets. The first set alleges three federal claims: one against only the Secretary of the Interior and two against the Poarch officials and federal defendants. The second and third sets are alternative claims that depend on the success of the claim against the Secretary. If it succeeds, the complaint alleges three claims under Alabama law, only two of which are against the Poarch officials and federal defendants in their official capacities. If it fails, the complaint alternatively alleges five claims under federal law against the Poarch officials and federal defendants.

The complaint's first claim against the Secretary seeks a declaration that the decision to hold Hickory Ground in trust for the Poarch Band is void under the Indian Reorganization Act. Land that the United States holds in trust for the benefit of a tribe is considered "Indian country." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 511 (1991); *see* 18 U.S.C. § 1151. Tribes have regulatory jurisdiction over this kind of land. *See Buzzard v. Okla. Tax Comm'n*, 992 F.2d 1073, 1076 (10th Cir. 1993) (explaining that whether land is "Indian country" is the primary question for "purposes of both civil and criminal jurisdiction" and that trust lands are "Indian country"); *Citizens Against Casino Gambling v. Chaudhuri*, 802 F.3d 267, 280–81, 284 (2d Cir. 2015) (explaining that trust lands are within tribal jurisdiction); *City of Sherrill v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 220–21 (2005) (connecting tribal sovereignty to trust status); *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 328 (2008) ("[O]nce tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it."). And the Poarch Band's gaming activities at the casino depend on the land's trust status. *See TOMAC v. Norton*, 193 F. Supp. 2d 182, 188 (D.D.C. 2002) (explaining that Class II and Class III gaming under the Indian Gaming Regulatory Act requires trust status); *see also* 25 U.S.C. § 2703(4)(b) (defining "Indian lands" under the Indian Gaming Regulatory Act to include trust land). So, a declaration that the Secretary's decision is void would impair the Poarch Band's regulatory jurisdiction over and gaming activities on Hickory Ground.

The drafting of the complaint makes uncertain which allegations and remedies are relevant to each claim. After general allegations about the excavation and development of Hickory Ground, the first claim that the complaint alleges is the one against the Secretary. But that claim incorporates none of the preceding general allegations of the complaint. Each later claim incorporates "the allegations contained in the preceding [p]aragraphs" of the complaint. That incorporation results in each claim incorporating not only the general allegations of the complaint, but also the allegations specific to earlier claims. The prayer for relief also indiscriminately realleges all preceding paragraphs. Although it divides the remedies sought based on the success of the claim against the Secretary, it does not state which remedies relate to which claims. Nor does it state which remedies relate to which defendants. For example, the prayer for relief requests imposition of a constructive trust over Hickory Ground without identifying a specific claim or defendant for that remedy. The prayer for relief also requests an order that requires the Poarch officials to restore Hickory Ground to its preexcavation state but does not identify the claims for which the Muscogee Nation seeks that remedy.

The Poarch Band defendants and federal defendants moved to dismiss, and the district court dismissed the complaint for two reasons. First, the district court ruled that the Poarch Band, its gaming authority, and officials of both enjoy sovereign immunity from all claims. The district court explained that the Poarch officials enjoy sovereign immunity under an exception to *Ex parte Young*, 209 U.S. 123 (1908), for claims that are the "functional equivalent of a

quiet title action" and implicate "special sovereignty interests." *See Coeur d'Alene*, 521 U.S. at 281. Second, the district court ruled that Federal Rule of Civil Procedure 19 required it to dismiss all claims against the other defendants because the suit could not proceed without the Poarch Band defendants.

The district court did not analyze the Poarch officials' sovereign immunity claim by claim. Instead, it ruled that several reasons that relate to different claims and remedies warranted applying the exception for all claims against the Poarch officials. The district court explained that a constructive trust over Hickory Ground and an injunction that requires restoration of the land would give the Muscogee Nation *de facto* beneficial ownership of the land and deprive the Poarch Band of its right to use it. The district court further explained that a declaration that the Secretary's decision to hold Hickory Ground in trust is void "would transform the nature of the [Poarch Band]'s relationship to Hickory Ground" from that of "sovereign ownership" to an "everyday property interest that might be held by a private individual or corporation." And it explained in a conclusory fashion that Hickory Ground "bear[s] special significance" to the Poarch Band because the Poarch Band descends from the Muscogee Nation, "has owned the land for 40 years," and operates a casino on it that is a "major driver of [the Poarch Band's] economy."

## II. STANDARD OF REVIEW

We review *de novo* the dismissal of a complaint based on sovereign immunity. *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.*, 692 F.3d 1200, 1203 (11th Cir. 2012).

## III. DISCUSSION

The Muscogee Nation does not appeal the ruling that the Poarch Band and its gaming authority enjoy sovereign immunity. It instead appeals only the ruling that the Poarch officials enjoy sovereign immunity. So we must decide only whether the district court erred when it ruled that the Poarch officials are immune from all claims under *Coeur d'Alene*.

Tribal officials ordinarily enjoy sovereign immunity in federal court from claims against them in their official capacities under federal or state law. *See Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1288, 1290 (11th Cir. 2015). But, under *Ex parte Young*, tribal officials are not immune from suits that seek prospective declaratory or injunctive relief against ongoing violations of federal law. *See* 209 U.S. at 155–56. And although *Ex parte Young* also permits suits against tribal officials for prospective relief against ongoing violations of state law, it permits that relief only when the challenged "conduct occurs outside of Indian lands." *PCI Gaming*, 801 F.3d at 1290. Yet, the Supreme Court has carved out a narrow exception to *Ex parte Young* even for claims against officials for prospective relief against ongoing violations of law. In *Coeur d'Alene*, the Court held that sovereign immunity bars a claim against an official that is the

"functional equivalent of quiet title" and implicates "special sovereignty interests." 521 U.S. at 281–82.

We divide our discussion into three parts. First, we explain that the district court erred when it failed to review the Poarch officials' sovereign immunity claim by claim. Because the complaint and the parties' arguments make uncertain which remedies are relevant to which claims, the district court must perform that claim-by-claim analysis on remand. Second, we reject the Muscogee Nation's argument that the Supreme Court abrogated *Coeur d'Alene* but reiterate that *Coeur d'Alene* remains a narrow exception to *Ex parte Young*. Third, we explain why we do not decide other issues that the parties present.

### A.   *The District Court Erred When It Failed to Analyze the Poarch Officials' Sovereign Immunity Claim by Claim.*

The district court erred when it failed to review the Poarch officials' sovereign immunity claim by claim. It instead concluded that the Poarch officials enjoy immunity against several claims and remedies together. That indiscriminate analysis was erroneous.

Courts must consider sovereign immunity and any exceptions to it on a claim-by-claim and defendant-by-defendant basis. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (explaining that "federal court[s] must examine each claim in a case to see" if sovereign immunity bars jurisdiction); *see also United States v. Georgia*, 546 U.S. 151, 159–60 (2006) (remanding for analysis of sovereign immunity "on a claim-by-claim basis"). Indeed, *Ex parte Young* contemplates this separate analysis because it permits

claims that seek only a certain kind of relief: prospective declaratory or injunctive relief for ongoing violations of law. *See* 209 U.S. at 155–56. Courts cannot know whether *Ex parte Young* permits a claim without considering against whom relief is sought.

Following this principle, we have reviewed sovereign immunity for each claim and defendant in a similar appeal. *See PCI Gaming*, 801 F.3d at 1287–93. In *PCI Gaming*, Alabama sued the Poarch Band's gaming authority and tribal officials in their official capacities. *Id.* at 1286 & n.15. Alabama brought claims under the Indian Gaming Regulatory Act and state public nuisance law against both the gaming authority and tribal officials. *Id.* We first concluded that the gaming authority enjoyed sovereign immunity from both claims as an arm of the tribe. *Id.* at 1287–88. We then concluded that the tribal officials were not immune from the federal claim under *Ex parte Young* because Alabama sought declaratory and injunctive relief against ongoing violations of federal law. *Id.* at 1288. And we concluded that the tribal officials enjoyed sovereign immunity from the state law claim because their conduct occurred on Indian lands. *Id.* at 1293.

The district court failed to perform this claim-by-claim and defendant-by-defendant analysis when it considered the claims against the Poarch officials together. The district court considered the combined effect of multiple remedies, including a constructive trust and an injunction that orders the Poarch officials to restore Hickory Ground in concert. The district court did not explain to which claims those remedies relate. Whether *Coeur d'Alene* applies

turns on the nature of the claim and relief sought. A court cannot know whether a claim is the functional equivalent of quiet title or if it implicates special sovereignty interests without examining the relief sought for that claim. *See Coeur d'Alene*, 521 U.S. at 282. The district court should have separately considered each claim against the Poarch officials and the relief sought to determine whether *Coeur d'Alene* applies to that claim.

Nevertheless, the complaint and the parties' arguments bar us from deciding, in the first instance, whether the Poarch officials enjoy sovereign immunity from any claim. The complaint bears features of "shotgun pleading." It contains "multiple counts" and "each count adopts the allegations of all preceding counts." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). And several counts assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. This kind of pleading fails to give defendants "adequate notice" of the "grounds upon which each claim rests." *Id.* It also impairs the ability of courts to perform the claim-by-claim analysis that is necessary here. The lack of reference to specific claims in the prayer for relief and its incorporation of all preceding paragraphs of the complaint further muddies the analysis. And the parties' briefs on appeal failed to present arguments about *Coeur d'Alene* on a claim-by-claim basis.

For example, the complaint makes uncertain which claims seek a declaration that the Secretary of the Interior's decision to

hold Hickory Ground in trust for the benefit of the Poarch Band is void. To be sure, the complaint seeks that remedy for the claim against the Secretary of the Interior. But the district court considered that remedy in its analysis of the Poarch officials' immunity. Although the parties agree on appeal that the claim against the Secretary is not against the Poarch officials, the inartful drafting of the complaint leaves uncertain whether the Muscogee Nation seeks to void the land's trust status as a remedy for other claims too.

Clarity on this point matters. If the Muscogee Nation seeks the declaration as a remedy for a claim against only the United States, the declaration is irrelevant to the Poarch officials' immunity. The only relevant sovereign would be the United States. A claim against an official that would "restrain the Government from acting. . . or . . . compel it to act" is a claim "against the sovereign." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (citation and internal quotation marks omitted). If the Muscogee Nation seeks the declaration against only the Secretary of the Interior, it would implicate the sovereign immunity of the United States, not the Poarch officials, because it would restrain only the United States from holding Hickory Ground in trust. But Congress waived sovereign immunity for this kind of claim against the Secretary under the Administrative Procedure Act. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 213, 224 (2012); *accord PCI Gaming*, 801 F.3d at 1291. The claim could affect the regulatory jurisdiction of the Poarch Band over Hickory Ground. *See City of Sherrill*, 544 U.S. at 220–21; *Citizens Against Casino Gambling*, 802 F.3d at 280–81, 284; *Buzzard*, 992 F.2d at 1076; *Citizen Band Potawatomi*, 498

U.S. at 511; *Plains Com. Bank*, 554 U.S. at 328. But that ancillary effect does not change that the claim is against the United States as a sovereign, not the Poarch Band.

In the light of these impediments to our review, the district court is better suited to consider on remand whether the Poarch officials enjoy sovereign immunity from any claim. In doing so, the district court should permit the Muscogee Nation to amend its complaint to remove the Poarch Band and its gaming authority as defendants and to conform the complaint to the requirements of notice pleading. And the district court, with the benefit of the parties' arguments about the amended complaint, should consider the Poarch officials' sovereign immunity claim by claim.

### B. The District Court Did Not Err by Treating Coeur d'Alene *as Precedential.*

The Muscogee Nation argues too that the district court erred when it even considered whether *Coeur d'Alene* applies. According to the Muscogee Nation, the Supreme Court abrogated *Coeur d'Alene* in *Verizon Maryland Inc. v. Public Service Commission*, 535 U.S. 635 (2002). The Muscogee Nation would have us hold that the district court was wrong to give *Coeur d'Alene* any precedential authority. We reject that argument.

The Supreme Court has explained that inferior courts must follow its precedent that has "direct application in a case" even if it "appears to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). And we must leave to the Supreme Court the

"prerogative of overruling its own decisions." *Id.* In this context, we should not infer anything from dicta or silence.

*Verizon Maryland* stated that *Ex parte Young* requires "only" that a court "conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" 535 U.S. at 645 (alteration adopted) (quoting *Coeur d'Alene*, 521 U.S. at 296 (O'Connor, J., concurring in part and concurring in the judgment)). The Muscogee Nation argues that this statement abrogated the *Coeur d'Alene* exception to *Ex parte Young* for suits that are the equivalent of actions to quiet title and implicate special sovereignty interests. We disagree.

The Supreme Court did not overrule *Coeur d'Alene* by failing to mention that exception in *Verizon Maryland*. We do not read an "opinion like we would read words in a statute." *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1332 (11th Cir. 2023), *aff'd*, 144 S. Ct. 1135 (2024). When we consider the authority of precedent, we consider its "context," including the "question the court was answering, the parties' arguments, and [the] facts of the case." *Id.* *Verizon Maryland* did not involve land or special sovereignty interests. It involved a challenge to an "order of a state utility commission requiring reciprocal compensation for telephone calls to Internet Service Providers." 535 U.S. at 638. The Supreme Court did not discuss special sovereignty interests, much less reject their relevance in a different context. So, we cannot conclude that *Verizon Maryland* overruled *Coeur d'Alene*.

Although *Coeur d'Alene* is still good law, it is nevertheless a "narrow exception," *Curling v. Raffensperger*, 50 F.4th 1114, 1121 n.3 (11th Cir. 2022), dependent on three "particular and special circumstances," *Coeur d'Alene*, 521 U.S. at 287; *see Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014). First, a claim that seeks *Ex parte Young* relief against an official must be the equivalent of an action to quiet title, which means that it shifts "substantially all benefits of ownership and control" of land from the sovereign to an adverse claimant. *Coeur d'Alene*, 521 U.S. at 282. And the adverse claimant must "assert a claim to property antagonistic" to the sovereign. *Match-E-Be-Nash-She-Wish*, 567 U.S. at 219–20. Second, success on the claim must impair "special sovereignty interests" with "far-reaching and invasive relief" that would effectively determine that the "lands in question are not even within the regulatory jurisdiction" of the sovereign. *Coeur d'Alene*, 521 U.S. at 281–82. Third, the lands must be an "essential attribute of sovereignty" and "infused with a public trust" that the sovereign must respect. *Id.* at 283 (citation and internal quotation marks omitted).

For instance, *Coeur d'Alene* involved submerged lands that Idaho owned as an incident of statehood under the Constitution and the equal-footing doctrine. *Id.* Specifically, Idaho "acquired ownership of the submerged lands upon its statehood in 1890," so the lands had been "long deemed by the State to be an *integral* part of its territory." *Id.* at 266, 282 (emphasis added). Other circumstances relevant to tying the submerged lands to Idaho's own sovereignty included the "weighty *public* interests in submerged lands" that American law has long recognized and Idaho's interest in

water for the overall *public* benefit, and the lake being "held in trust by the Governor" and "declared to be devoted to a *public use* in connection with the preservation of said lake in its present condition." *Id.* at 285–87 (alteration adopted) (emphasis added) (citation and internal quotation marks omitted). The Constitution guaranteed that new states like Idaho would own these lands to protect public access to natural resources, which reflected the "importance of [them] to state sovereignty" and gave them a "unique status in the law." *Id.* at 283, 287.

In the light of the narrowness of *Coeur d'Alene*, there is substantial reason to doubt that some of the claims against the Poarch officials satisfy the *Coeur d'Alene* exception to *Ex parte Young*. For example, the three claims under Alabama law do not implicate the Poarch Band's "special sovereignty interests." *Id.* at 281. Those claims are premised on the Muscogee Nation's success on its claim against the Secretary of the Interior. The Poarch Band would not have regulatory jurisdiction over Hickory Ground if the claim against the Secretary succeeds because the Poarch Band's sovereignty over it depends on the United States holding it in trust. *See City of Sherrill*, 544 U.S. at 220–21; *Citizens Against Casino Gambling*, 802 F.3d at 280–81, 284; *Buzzard*, 992 F.2d at 1076; *Citizen Band Potawatomi*, 498 U.S. at 511; *Plains Com. Bank*, 554 U.S. at 328. Instead, the Poarch Band would hold Hickory Ground in fee simple like any owner of private property, as it did before the Secretary decided to hold it in trust. So, as the Poarch Band conceded, Oral Arg. 33:40–35:10, any relief for the state law claims would not remove Hickory Ground from the Poarch Band's "regulatory jurisdiction" and

implicate its "special sovereignty interests," *Coeur d'Alene*, 521 U.S. at 281–82.

Likewise, there is substantial reason to doubt whether Hickory Ground is an "essential attribute of sovereignty" that is "infused with a public trust" like the submerged lands in *Coeur d'Alene*. *Id*. at 283 (citation and internal quotation marks omitted). Unlike state jurisdiction over submerged lands, the Poarch Band's regulatory jurisdiction over Hickory Ground does not result exclusively from its sovereignty. *See id*. The Poarch Band acquired Hickory Ground in fee simple in 1980, as any private party would acquire land. And its regulatory jurisdiction over Hickory Ground depends on the United States's decision to hold the land in trust. *See City of Sherrill*, 544 U.S. at 220–21; *Citizens Against Casino Gambling*, 802 F.3d at 280–81, 284; *Buzzard*, 992 F.2d at 1076; *Citizen Band Potawatomi*, 498 U.S. at 511; *Plains Com. Bank*, 554 U.S. at 328. Nor does the Poarch Band hold Hickory Ground to protect common use of public resources. *See Coeur d'Alene*, 521 U.S. at 283, 287. Although the casino on Hickory Ground serves a commercial purpose, that enterprise does not implicate concerns about public access to natural resources. *See id*. When the district court reviews the Poarch officials' immunity claim by claim on remand, it should compare the Muscogee Nation's claims with the "particular and special circumstances" of *Coeur d'Alene*. *Id*. at 287.

C. *We Do Not Decide Several Other Issues that the Parties Present.*

Our vacatur of the dismissal obviates the need to review whether the district court erred by treating the Poarch Band

defendants as necessary and indispensable parties. *See* FED. R. CIV. P. 19. Nor do we decide any alternative grounds for affirming the dismissal of claims against the federal defendants. The federal defendants do not defend the dismissal of the claims against them under Rule 19. For each claim, they instead offer one or more alternative grounds for affirmance. Some of these grounds raise significant questions of federal law. But the federal defendants devote little more than a page of their brief to any one ground. And deciding some of the grounds would require us to parse the allegations of the complaint to determine which relate to a specific claim. Because of the shotgun nature of the complaint and the parties' underdeveloped arguments on these issues, we decline to reach them. The federal defendants' arguments are better suited for the district court to consider first on remand with the benefit of an amended complaint and thorough briefing.

## IV. CONCLUSION

We **VACATE** the order of dismissal and **REMAND** for further proceedings.